WILLIAM E. WHEELER *et al.*, Plaintiffs-Appellants, *v.* CATERPILLAR TRACTOR COMPANY, Defendant-Appellee.

Fourth District   No. 4—83—0606

Opinion filed April 17, 1984.

Bennett, Willoughby & Latshaw, P.C., of Decatur (K. Michael Latshaw, of counsel), for appellants.

Hull, Campbell & Robinson, of Decatur (Michael I. Campbell and Jon D. Robinson, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The plaintiffs (husband and wife), filed their six-count complaint against the defendant (husband's former employer) alleging retaliatory discharge and the intentional infliction of severe emotional distress along with accompanying counts for loss of consortium. The

defendant filed an answer to the complaint. The circuit court then allowed the defendant to withdraw its answer and to file a motion to dismiss in its place. The court subsequently ruled in favor of the defendant on its motion to dismiss. On appeal, plaintiffs contend that the circuit court erred in allowing the defendant to withdraw its answer and to substitute a motion to dismiss. The plaintiffs also claim that, in any event, the court's order granting the motion to dismiss was error because their complaint did state a cause of action for retaliatory discharge as a matter of law. We affirm.

The facts, in brief, as gleaned from the complaint suggest that the plaintiff-husband was discharged by the defendant company on August 29, 1979, after having been employed by it since 1955. At the time of his discharge, the plaintiff was an "at-will" employee engaged in quality control testing for the defendant. He worked regularly with electrically generated radiation in the X-ray department. In 1979 this department switched to a live source of radiation called a Cobalt 60 Unit. At this time the plaintiff repeatedly requested that he be transferred out of this department because he felt that the Cobalt 60 Unit was not being operated properly and because he feared for his safety. The defendant, however, did not allow the plaintiff to transfer. Consequently, the plaintiff refused to work with the Cobalt 60 Unit and the defendant discharged him.

The plaintiffs filed their complaint on May 12, 1981. Counts I and II alleged that the defendant's wilful and wanton conduct caused the plaintiff-husband severe emotional distress. Compensatory and punitive damages were requested in these counts. Count III alleged that the discharge violated public policy and contained a request for compensatory and punitive damages for the plaintiff-husband. Counts IV and V requested compensatory damages only for the plaintiff-wife as a result of her loss of consortium caused by defendant's infliction of severe emotional distress upon her husband. Count VI alleged violation of public policy and requested compensatory damages for the wife for her loss of consortium caused by the defendant's alleged retaliatory discharge of her husband.

The defendant filed an answer to the complaint on June 11, 1981, and discovery was initiated. The case was originally set for trial on June 20, 1983; however, the plaintiffs filed a motion on May 5, 1983, seeking an indefinite continuance of the cause. On May 13, 1983, the defendant filed a motion to withdraw its answer and to file, in lieu thereof, a motion to dismiss. On June 10, 1983, the court granted the motion to continue and allowed the defendant to replace its answer with a motion to dismiss. The motion asked that counts III and VI be

dismissed for failure to state a cognizable cause of action and that counts I and II be dismissed because they contained insufficient allegations to support prayers for punitive damages. In its order of August 24, 1983, the court dismissed counts III and VI for failing to state a cause of action. The court also dismissed the prayers for punitive damages in counts I, II, IV, and V, although counts IV and V contained no such prayers. The court then found that there was no reason to delay appeal pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

■■ On appeal the plaintiffs first argue that the circuit court erred in permitting the defendant to withdraw its answer and to file a motion to dismiss in its place. The defendant's original answer was filed on June 11, 1981. Nearly two years later on May 13, 1983, the defendant filed its motion to withdraw its answer and to substitute a motion to dismiss. The plaintiffs contend that this time span and the amount of discovery conducted in the meantime make the court's decision an abuse of discretion.

The parties here agree that the defendant's motion should be governed by section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615), formerly section 45 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 45). That section places no specific time limit for the filing of a motion with respect to pleadings. Subsection (e) does state that any party "may seasonably move" for a judgment on the pleadings. Illinois courts have construed this section to give circuit courts the discretion to allow the filing of late pleadings. In *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 253-54, 433 N.E.2d 1350, 1355, the court stated:

"There is very little case law concerning the time period in which motions to dismiss can be filed. In *Greenlee Brothers & Co. v. Rockford Chair & Furniture Co.* (1969), 107 Ill. App. 2d 326, 332-33, however, this court did state that the trial court has discretion to permit the filings of tardy pleadings, and unless plaintiff can show that it was prejudiced by the late filing there is no abuse of discretion. See also *Silberstein v. Joos* (1978), 59 Ill. App. 3d 293; *McGrath Heating & Air Conditioning Co. v. Gustafson* (1976), 38 Ill. App. 3d 465.

Because this court can view the joint motion to dismiss as a section 45 motion, because section 45 does not refer to a time period in which such motions must be brought, and because plaintiff has failed to establish that it has been prejudiced by the late filing of the joint motion, the trial court did not abuse

its discretion in ruling on the joint motion to dismiss, notwithstanding the fact that several of the moving defendants had previously filed answers to the complaint."

Likewise, the Illinois Supreme Court has stated that the "objection that the complaint does not state a cause of action *** may be raised at any time, either before or after judgment." (*Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153, 85 N.E.2d 682, 685, *appeal dismissed* (1949), 338 U.S. 804, 94 L. Ed. 487, 70 S. Ct. 72.) Therefore, to prove that the court here abused its discretion the plaintiffs must show that they were somehow prejudiced by the late filing of the defendant's motion.

The plaintiffs do not allege any specific prejudice that they have suffered as a result of the defendant's tardy motion. They merely allege that the ends of justice cannot be served by allowing the motion after nearly two years of preparing for trial. This general allegation must be considered in the light of the plaintiff's own request for a continuance of the trial, filed only eight days before the defendant's motion to withdraw its answer. Since the plaintiffs sought, and were granted, an indefinite delay in the proceedings, it is not likely that they were prejudiced by the tardy filing of the defendant's motion to withdraw its answer. Since the plaintiffs have failed to show any prejudice we cannot say that the court's decision to allow the tardy motion was an abuse of discretion.

■ The plaintiffs next contend that even if the motion to dismiss were properly filed, the circuit court erred in granting it. They claim that counts III and VI of their complaint did state a cause of action based upon the tort of retaliatory discharge. However, any contention that the court erred in dismissing the prayers for punitive damages in counts I and II has been waived by the plaintiffs' failure to argue this point on appeal. See 87 Ill. 2d R. 341(e)(7).

To withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. In ruling upon a motion to dismiss the circuit court may consider the pleadings, affidavits in support of the motion, answers to interrogatories, and deposition evidence. (*Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218.) If the facts alleged demonstrate any possibility of recovery, the order of dismissal will be reversed.

With the decision of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, Illinois joined the growing number of States recognizing the tort of retaliatory discharge. This tort is an exception to the general rule that an "at-will" employee may be discharged at any time for any cause. To state a cause of action for retaliatory discharge

"[a]ll that is required is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881.

In the present case, the complaint states that the plaintiff-husband was discharged because of his refusal to work with allegedly unsafe equipment. The complaint also alleges the defendant's operation of the Cobalt 60 Unit violated several Nuclear Regulatory Commission rules. The complaint then states that the discharge of the plaintiff-husband was in contravention of the public policy of Illinois in that a worker should not be discharged for refusing to work with allegedly unsafe equipment. It is clear from the complaint that the plaintiff was discharged in retaliation for certain activities. Thus the issue to be resolved is whether the plaintiffs have sufficiently alleged that the discharge was in violation of a clear public policy.

There are no Illinois court decisions discussing public policy under similar factual circumstances. In *Kelsay*, the supreme court held that discharging an employee for filing a workmen's compensation claim violated the clear public policy enunciated in the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). In *Palmateer*, the supreme court held that discharging an employee for assisting the police in the investigation and prosecution of suspected crimes violates the clear public policy in favor of the enforcement of the criminal code of Illinois.

In its *Palmateer* decision, the supreme court sought to determine the contours of the tort of retaliatory discharge. In doing so, the court stated that an employer retains the right to fire workers at will in cases where no clear mandate of public policy is involved. The court then discussed the definition of public policy and stated:

> "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (*Smith v. Board of Education* (1950), 405 Ill. 143, 147.) Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79.)

The court went on to list a number of decisions from other jurisdictions upholding the tort of retaliatory discharge for such things as refusing to commit perjury; refusing to engage in price fixing; refusing to violate a consumer credit code; refusing to practice medicine without a license; refusing to evade jury duty; engaging in statutorily protected union activities; and for filing a workers' compensation claim. On the other hand, the action had not been allowed where a worker disputed a company's internal management system; took too much sick leave; tried to examine the company's books in a shareholder capacity; impugned the company's integrity; refused to be examined by a psychological-stress evaluator; or used the employer's Christmas fund improperly.

In summary, the supreme court noted that the action had been allowed where the public policy was clear. However, the action was denied where it was clear that only private interests were at stake. The court then observed that where the interest at stake is less than clear, the courts of other jurisdictions have given conflicting answers. In this list, the court included the situation where an employee is discharged for internal disputes regarding product safety. This situation appears closest to the circumstances in the present case.

While the supreme court expressed no view as to the less-than-clear areas, it did cite *Pierce v. Ortho Pharmaceutical Corp.* (1979), 166 N.J. Super. 335, 399 A.2d 1023, and *Geary v. United States Steel Corp.* (1974), 456 Pa. 171, 319 A.2d 174, as cases dealing with the situation where an employee was discharged for challenging the safety of the company's products. In *Pierce* the court held that this factual situation may state a cause of action and it remanded the case for further factual development. In *Geary* the court held that this type of internal dispute did not involve clear public policy and affirmed the lower court's dismissal of the complaint.

In determining which side of the line the allegations in the present complaint should fall upon, it is important to note that the facts here involve less *indicia* of public policy than those in *Pierce* and *Geary*. Those cases dealt with an employee voicing concerns to his superiors about possible defects in the employer's products. These products were being sold to the public. On the other hand, we deal here with an employee who was discharged because he maintained that the equipment for his job was possibly unsafe.

To sustain his position, plaintiff alleged in his complaint that an investigation by the United States Nuclear Regulatory Commission (NRC) had found inadequacies in the defendant's radiation safety program. These allegations must be viewed as of the time of plaintiff's

discharge, which was on August 20, 1979. The record reveals that the investigations by the NRC occurred on October 12, 1979, and March 11, 1981. There is no indication in the record that any investigation was contemplated nor pending on the date of plaintiff's discharge.

Moreover, we have examined those reports and they do not reveal that any inadequacies were of a life-threatening nature. Briefly summarized, the report of October 12, 1979, found the following: (1) failure to post a certain notice; (2) a practice of padlocking the door to the radiographic facility during operations; (3) failure to keep survey records of radiation levels in unrestricted areas; (4) failure to calibrate two survey meters for more than three months; (5) maintaining utilization logs with less than all the information required; (6) maintaining a less than adequate daily record of dosimeter readings; (7) failure on 11 days to record radiation surveys to determine that the sealed source was in its shielded condition.

The report of March 11, 1981, states, "No items of noncompliance or unsafe conditions were found."

It is thus apparent that on August 20, 1979, there was no hard evidence of unsafe conditions, but rather only plaintiff's unilateral and subjective decision that such conditions did exist. His position is therefore untenable.

■ The plaintiffs also rely on *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588, to support their contentions. The employee in that case was fired for attempting to force his employer to comply with the Illinois criminal code. The court there found that the public policy in favor of the enforcement of criminal laws which was cited in *Palmateer* was also present in that case. While the plaintiffs can point to no criminal violations here, they do allege violations of Nuclear Regulatory Commission rules. However, it is clear from the record that these violations were not discovered until an inspection more than one month after the plaintiff's dismissal. The plaintiff was not attempting to remedy any possible rule violations, nor could they have played a part in his discharge. The public policy found in *Palmateer* and *Petrik* is not present in this case.

As the court in *Pierce* noted, courts

"must guard against a potential flood of unwarranted disputes and litigation that might result from such a doctrine, based on vague notions of public policy. Hence, if there is to be such an exception to the at-will employment rule, it must be tightly circumscribed so as to apply only in cases involving truly significant matters of clear and well-defined public policy and substantial violations thereof." (*Pierce v. Ortho Pharmaceutical*

*Corp.* (1979), 166 N.J. Super. 335, 342, 399 A.2d 1023, 1026.)
The plaintiffs here can point to no articulation of a clear or well-defined public policy that has been contravened. In the absence of this, we cannot say that the trial court erred in dismissing counts III and VI of their complaint.

Accordingly, the judgment of the circuit court of Macon County dismissing counts III and VI and the prayers for punitive damages in counts I and II is affirmed and the cause is remanded to that court for further proceedings.

Affirmed and remanded.

TRAPP and MILLER, JJ., concur.