(No. 60181.—

WILLIAM E. WHEELER *et al.*, Appellants, v. CATERPILLAR TRACTOR COMPANY, Appellee.

*Opinion filed October 18, 1985.—Rehearing denied December 2, 1985.*

MILLER, J., took no part.
MORAN and RYAN, JJ., dissenting.

Willoughby & Latshaw, of Decatur (K. Michael Latshaw, of counsel), for appellants.

Hull, Campbell & Robinson, of Decatur (Michael I. Campbell and Jon D. Robinson, of counsel), and Seyfarth, Shaw, Fairweather & Geraldons, of Chicago (Gerald D. Skoning and J. Stephen Poor, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, William E. Wheeler and Judith A. Wheeler, appealed from the order of the circuit court of Macon County dismissing with prejudice counts III and VI of their six-count complaint against defendant, Caterpillar Tractor Company, and striking from counts I, II, IV and V the prayers for punitive or exemplary damages. The appellate court affirmed (123 Ill. App. 3d 539), and we allowed plaintiffs' petition for leave to appeal (94 Ill. 2d R. 315).

The appellate court affirmed the striking of the prayers for punitive damages, holding that the circuit court had entered no such order with respect to counts IV and V, and that, by failing to argue the point on appeal, plaintiffs had waived any error with respect to counts I and II. This appeal involves only counts III and VI.

In count III it was alleged that plaintiff, William E. Wheeler, had been employed by defendant since December 1955; that in August 1979 he was employed in defendant's X-ray department as a radiographer; that approximately eight months earlier he had been told by his supervisors that defendant was installing a Cobalt 60 unit that utilized live radioactive cobalt and that plaintiff would be expected to operate; and that plaintiff repeatedly requested that he not be required to operate the cobalt unit and that he be

transferred out of the X-ray department for the reason that the cobalt unit was not properly operated and could cause serious and permanent injury. He alleged that cobalt 60 is a live source of radioactivity; that its safe handling requires more training than plaintiff was given; and that a Nuclear Regulatory Commission investigation disclosed a number of inadequacies and violations of regulations published in designated paragraphs of the Federal Register. Plaintiff also alleged that defendant refused to grant his request for transfer from the X-ray department and, in retaliation for his refusal to work with the cobalt unit, discharged him. He alleged, too, that the discharge was in contravention of the public policy of the State of Illinois and resulted from his employer's violation of federally mandated safety codes.

In count VI, plaintiff, Judith A. Wheeler, made substantially the same allegations, and further alleged that she had been deprived of plaintiff's services, society, companionship, and his conjugal relationship, and sought damages therefor.

In affirming the judgment, the appellate court, citing *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, held that to state a cause of action for the tort of retaliatory discharge requires that it be alleged in the complaint that the employee was discharged in retaliation for his activities, and that the discharge was in contravention of a clearly mandated public policy. The appellate court concluded that plaintiff William Wheeler was not attempting to remedy any possible rule violations, nor could they have played any part in his discharge, and therefore the clearly mandated public policy required under *Palmateer* was not present.

Because the order was entered upon allowance of a motion to dismiss, all facts properly pleaded must be taken as true. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187.) In determining the sufficiency of the dis-

missed counts, we must apply the rule that no cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128.

It is plaintiffs' contention that the enactment of Federal legislation and the promulgation of regulations, violations of which are alleged in the complaint, enunciate a clearly mandated public policy to be uniformly enforced throughout the United States. They argue that the complaint alleged that Mr. Wheeler was discharged in retaliation for his refusal to work in the face of these violations and that the complaint stated a cause of action. It is defendant's position that because the complaint alleged no communication to the appropriate authorities of plaintiffs' claims of violation of the regulations, the controversy remained an internal matter between employer and employee and no public policy question was involved.

The control of radioactive materials was preempted by the enactment of the Atomic Energy Act of 1954 (42 U.S.C. sec. 2011 *et seq.* (1982); *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Com.* (1983), 461 U.S. 190, 75 L. Ed. 2d 752, 103 S. Ct. 1713; *Illinois v. Kerr-McGee Chemical Corp.* (7th Cir. 1982), 677 F.2d 571), and the congressional findings (42 U.S.C. sec. 2012 (1982)) and declaration of policy (42 U.S.C. sec. 2011 (1982)) clearly enunciate a public policy which is national in scope.

Although not briefed or argued by the parties, we have, *sua sponte*, raised the question whether under the provisions of section 210 of the Energy Reorganization Act (42 U.S.C. sec. 5851 (1982)) the preemption is so extensive as to preclude the bringing of this action. Section 5851, in pertinent part, provides:

"(a) Discrimination against employee

No employer, including a Commission licensee, an applicant for a Commission license, or a contractor or a subcontractor of a Commission licensee or applicant, may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)—

(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C. sec. 2011 *et seq.*], or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

(2) testified or is about to testify in any such proceeding or;

(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C. sec. 2011 *et seq.*].

(b) Complaint, filing and notification

(1) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) of this section may, within thirty days after such violation occurs, file (or have any person file on his behalf) a complaint with the Secretary of Labor (hereinafter in this subsection referred to as the 'Secretary') alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint and the Commission.

(2)(A) * * *

(B) If, in response to a complaint filed under paragraph (1), the Secretary determines that a violation of subsection (a) of this section has occurred,

the Secretary shall order the person who committed such violation to (i) take affirmative action to abate the violation, and (ii) reinstate the complainant to his former position together with the compensation (including back pay), terms, conditions, and privileges of his employment, and the Secretary may order such person to provide compensatory damages to the complainant. If an order is issued under this paragraph, the Secretary, at the request of the complainant shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary, by the complainant for, or in connection with, the bringing of the complaint upon which the order was issued." 42 U.S.C. secs. 5851(a), (b) (1982).

Even in legislation in which Congress has not totally displaced State regulation in a specific area, State law is preempted to the extent that it actually conflicts with Federal law or if it stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. (*Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Com.* (1983), 461 U.S. 190, 75 L. Ed. 2d 752, 103 S. Ct. 1713.) In *Pacific Gas & Electric* the Supreme Court held that a primary purpose of the Atomic Energy Act is the promotion of nuclear power and that a California statute conditioning, as a matter of economic policy, construction of additional nuclear power plants on findings of the State Energy Commission that adequate means of disposal exist for nuclear waste did not so frustrate the Atomic Energy Act's purpose to develop the commercial use of nuclear power as to be preempted by the Act. In *Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615, the Supreme Court rejected the contention that an award for punitive

damages in an action based on Oklahoma law conflicted with Congress' express intent to preclude dual regulation of radiation hazards. The court concluded that it was not inconsistent to vest the Nuclear Regulatory Commission with exclusive regulatory authority over the safety aspects of nuclear development and at the same time permit the plaintiffs to recover for injuries caused by nuclear hazards, and that the award of punitive damages was not preempted by Federal law.

Under the provisions of section 5851 an employee may be reinstated in his employment and recover compensatory damages, but no provision is made for punitive damages. In *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, it was held that a wrongfully discharged employee whose employment was covered by a collective-bargaining agreement providing for grievance procedures was not required to exhaust those procedures prior to bringing an action for the tort of retaliatory discharge. The court reasoned that such an employee had a cause of action in tort independent of any contract remedy which may have been based on the collective-bargaining agreement. Citing *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, the court held that he was not limited to the remedies provided in the collective-bargaining agreement and could seek to recover punitive damages. We find the situation here analogous to *Silkwood* and conclude that it was not the congressional intent to preempt the field.

Although somewhat inartfully stated, the complaint alleged that plaintiff was discharged in retaliation for his refusal to work in the handling of cobalt 60 while the operations were being conducted in violation of regulations promulgated by the Nuclear Regulatory Commission and published in the Federal Register. We do not agree with the appellate court that the question whether the facts as alleged involved public policy, or a matter of private concern, depended upon whether a complaint was made to the

regulatory authorities. The legislation and the regulations declared the public policy, and the existence of that public policy did not depend upon whether plaintiff had communicated a complaint to the Nuclear Regulatory Commission or whether its investigation preceded or followed that complaint.

We note that the circuits are not in agreement on the question whether the provisions of section 5851 protect an employee from retaliation based on internal safety complaints or whether participation in a proceeding is required. In *Consolidated Edison Co. of New York, Inc. v. Donovan* (2d Cir. 1982), 673 F.2d 61, the court denied the petition for review of an order directing the reinstatement of an employee who had been discharged because he had made numerous complaints about safety at the nuclear power plant where he was employed. There is nothing in the opinion to indicate that he had participated in a proceeding for the enforcement of the Act. In *Mackowiak v. University Nuclear Systems, Inc.* (9th Cir. 1984), 735 F.2d 1159, the court sustained the Secretary of Labor's conclusion that section 5851 protects employees from retaliation based on internal-safety and quality-control complaints. In *Brown & Root, Inc. v. Donovan* (5th Cir. 1984), 747 F.2d 1029, the court held that the statute does not protect the filing of purely internal quality-control reports, but is designed to protect "whistle blowers" who provide information to governmental entities. The Supreme Court has not addressed the question whether section 5851 applies to purely internal complaints.

Plaintiffs have alleged that William Wheeler was discharged in violation of a clearly mandated public policy. In *Palmateer v. International Harvester* Co. (1981), 85 Ill. 2d 124, it was held that a cause of action for retaliatory discharge existed because the plaintiff was discharged for informing a local law enforcement agency that a co-worker may have committed a criminal violation. In *Palmateer* the

court said, "There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." (85 Ill. 2d 124, 132.) The protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence, and by the enactment of the legislation cited, Congress has effectively declared a clearly mandated public policy to that effect. We hold, therefore, that counts III and VI stated a cause of action for retaliatory discharge for refusing to work under conditions which contravened the clearly mandated public policy, and the circuit court erred in dismissing them.

The parties have limited their arguments to the sole question whether counts III and VI stated a cause of action for retaliatory discharge. They have not briefed or argued, and we do not decide, assuming that plaintiffs prevail in this cause, what elements of damage are recoverable, or whether any of the damages sought in count VI may be recovered as the result of the alleged wrongful discharge of William Wheeler. We decide only the narrow issue presented, and in holding that the counts· erroneously dismissed stated a cause of action for retaliatory discharge, we do not imply any opinion concerning the damages.

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Macon County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE MORAN, dissenting:
The plaintiff in this case brought a common law action

for retaliatory discharge instead of pursuing the remedies provided for in section 210 of the Energy Reorganization Act of 1974 (42 U.S.C. sec. 5851 (1982)). I disagree with the conclusion that plaintiff's cause of action is not preempted by Federal law. Moreover, I find no justification for extending the tort of retaliatory discharge to cases where, as here, existing remedies adequately protect the employee's interest in earning a livelihood and the public's interest in safety. Therefore, in addition to finding that plaintiff's cause of action is preempted by section 210, I would hold as a matter of law that plaintiff's remedy lies solely under section 210.

The preemption doctrine has its basis in the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2). The doctrine provides that when Congress has legislated on a given subject, concurrent State law may be preempted by the Federal law. (See generally *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1151-53; *Hines v. Davidowitz* (1941), 312 U.S. 52, 68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404-05.) In order to determine if a State law has been preempted, the courts must examine the congressional intent behind an enactment. Congress' intent to preempt concurrent State law in a given area may be express or implied. (*Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 248, 78 L. Ed. 2d 443, 452, 104 S. Ct. 615, 621; *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Com.* (1983), 461 U.S. 190, 203-04; 75 L. Ed. 2d 752, 765, 103 S. Ct. 1713, 1722.) The Supreme Court in *Fidelity Federal Savings & Loan Association v. De la Cuesta* (1982), 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014, explained:

"Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *** Absent explicit pre-emp-

tive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' * * *

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' * * * or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' * * *." (458 U.S. 141, 152-53, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022.)

See also *Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615.

The majority opinion acknowledges that section 210 of the Energy Reorganization Act of 1974 (42 U.S.C. sec. 5851 (1982)), sometimes referred to as the "whistle blower" protection statute, affords protection to employees who believe that they have been discharged or discriminated against because they have testified, given evidence, or reported violations of Federal nuclear safety standards. The type of employee conduct protected by the statute is broadly described. Some courts have held that the protections of section 210 apply to retaliatory employment action resulting from purely internal company disputes over radiation safety. (See *Mackowiak v. University Nuclear Systems, Inc.* (9th Cir. 1984), 735 F.2d 1159; *Consolidated Edison Co. v. Donovan* (2d Cir. 1982), 673 F.2d 61. Contra, *Brown & Root, Inc. v. Donovan* (5th Cir. 1984), 747 F.2d 1029.) No formal proceed-

ings need to be initiated against the employer as a result of an employee's assistance or participation in order for the employee to be protected by section 210. See 10 C.F.R. sec. 30.7(a)(2) (1985).

Section 210 is enforced by the United States Secretary of Labor. Employees who believe that they have been discharged or discriminated against in violation of section 5851(a) may file a complaint with the Secretary within 30 days after such violation occurs. (42 U.S.C. sec. 5851(b)(1).) The Secretary then investigates the complaint to determine if a violation occurred. If the Secretary finds a violation, he may award appropriate relief, including reinstatement of the employee to his former position, together with compensation (including back pay), terms and privileges of his employment; compensatory damages; and reasonable legal costs, including attorney fees and expert witness fees. (42 U.S.C. sec. 5851(b)(2)(B). See generally *DeFord v. Secretary of Labor* (6th Cir. 1983), 700 F.2d 281; *Ellis Fischel State Cancer Hospital v. Marshall* (8th Cir. 1980), 629 F.2d 563, *cert. denied* (1981), 450 U.S. 1040, 68 L. Ed. 2d 237, 101 S. Ct. 1757.) The Secretary's orders are reviewable by the United States court of appeals. (42 U.S.C. sec. 5851(c)(1).) In addition, enforcement of the Secretary's order may be initiated by the employee by filing suit in Federal district court. 42 U.S.C. sec. 5851(e).

There is no doubt that the regulation of the safety aspects of nuclear energy has been predominately a matter of Federal concern. (*Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Com.* (1983), 461 U.S. 190, 211-12, 75 L. Ed. 2d 752, 770, 103 S. Ct. 1713, 1726.) The purpose of section 210 is to encourage "employees and union officials [to] help assure that employers do not violate requirements of the Atomic Energy Act." (42 U.S.C. sec. 5851, 1978 U.S. Code Cong. and Adm. News 7304.) Thus, section 210

touches on an area traditionally governed by Federal law.

In addition, section 210 represents just a part of the comprehensive and pervasive Federal regulatory scheme on nuclear energy. The statute here defines the class of individuals and entities subject to its prohibitions, defines the prohibited conduct, enumerates several and specific remedies available to employees, and provides for a detailed administrative and judicial process whereby aggrieved employees can seek redress for violations of the statute. A more comprehensive statute could hardly be imagined.

The fact that the regulation of the safety aspects of nuclear development has traditionally and almost exclusively been a matter of Federal not State concern, the pervasiveness of the Federal regulation of nuclear safety, and the comprehensive nature of the Federal "whistle blower" protection statute makes " 'reasonable the inference that Congress left no room for the States to supplement it.' " (*Fidelity Federal Savings & Loan Association v. De la Cuesta* (1982), 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022.) I would hold that plaintiff's cause of action is preempted by section 210.

The majority opinion, in holding that section 210 does not preempt plaintiff's common law cause of action for retaliatory discharge, relies primarily on *Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615. In that case, the plaintiff brought a common law tort action for injuries received by his decedent as the result of being contaminated by plutonium at defendant's plant. The Supreme Court held that the award of punitive damages based on Oklahoma law was not preempted by the Atomic Energy Act of 1954 (42 U.S.C. secs. 2011 through 2284 (1976 ed. and Supp. V)). Today's opinion, in addressing the preemption issue, sim-

ply states: "We find the situation here analogous to *Silkwood* and conclude that it was not the congressional intent to preempt the field." (108 Ill. 2d at 509.) The reliance on the *Silkwood* case is misplaced. The Supreme Court in *Silkwood* found express language in the Price-Anderson Act (42 U.S.C. sec. 2210 (1982)), an amendment to the Atomic Energy Act, which clearly indicated that State tort remedies for persons injured by nuclear accidents were, with certain exceptions, not preempted. (464 U.S. 238, 251-53, 78 L. Ed. 2d 443, 454-55, 104 S. Ct. 615, 623. See generally Comment, *Federal Preemption of the State Regulation of Nuclear Power: State Law Strikes Back* (1984), 60 Chi.-Kent L. Rev. 989, 1004-05.) Unlike the clear expression of congressional intent found in the language and history of the Price-Anderson Act, Congress has not expressly allowed for State tort remedies in section 210 of the Energy Reorganization Act of 1974. Moreover, the court in *Silkwood* found the absence of a Federal remedy to be significant. The court observed that it "is difficult to believe that Congress would *** remove all means of judicial recourse for those injured by illegal conduct." (464 U.S. 238, 251, 78 L. Ed. 2d 443, 454, 104 S. Ct. 615, 623.) Here, by contrast, Congress has provided plaintiff with a Federal remedy.

Furthermore, the impetus for this court's recognition of the tort of retaliatory discharge was the lack of any remedy available to employees in situations where they were discharged in "contravention of a clearly mandated public policy." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.) In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, this court recognized a cause of action for retaliatory discharge where a worker had been discharged for filing a workers' compensation claim. In so doing, the court reasoned that such an action was necessary in order to insure that at-will employees would

be able to freely exercise their rights under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) In *Palmateer*, a majority of this court recognized a cause of action for retaliatory discharge where an employee alleged he was fired for supplying information to local law-enforcement officials concerning· the possible criminal involvement of a fellow employee. Again, the rationale of the majority was that no remedy existed to protect an employee who was discharged for engaging in conduct which promoted the public policy favoring "citizen crime-fighters." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 132.) The court stated:

> "With the rise of large corporations conducting specialized operations and employing relatively immobile workers who often have no other place to market their skills, recognition that the employer and employee do not stand on equal footing is realistic. [Citation.] In addition, unchecked employer power, like unchecked employee power, has been seen to present a distinct threat to the public policy carefully considered and adopted by society as a whole. As a result, it is now recognized that a proper balance must be maintained among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." (85 Ill. 2d 124, 129.)

Even in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, a case in which I wrote a dissent, a majority of this court held that a cause of action for retaliatory discharge existed because they believed such an action was "necessary" in order to provide employees covered by a collective bargaining agreement with a "complete remedy." 105 Ill. 2d 143, 149.

When the tort of retaliatory discharge is placed in its proper historical perspective, it is difficult to justify today's decision. Based on the record before the court,

there is no indication that section 210 is inapplicable to the present case. The record indicates that defendant is licensed by the Nuclear Regulatory Commission and the employment dispute involves allegations of Federal radiation safety standards. Moreover, there is no indication that the remedy afforded by section 210 is inadequate to protect both the public's interest in safety and the employee's interest in earning a livelihood. Certainly Congress considered all the competing policies involved when it enacted section 210. (See 42 U.S.C. sec. 5851, 1978 U.S. Code Cong. and Adm. News 7303-04.) Thus, irrespective of whether today's action is preempted by Federal law, I do not think that this court should intrude into an area already regulated by a comprehensive Federal statute.

Courts in other jurisdictions have refused to recognize a cause of action for retaliatory discharge in circumstances where employees have adequate statutory or administrative remedies available to them. (See, *e.g., Corbin v. Sinclair Marketing, Inc.* (Colo. App. 1984), 684 P.2d 265; *Ohlsen v. DST Industries, Inc.* (1981), 111 Mich. App. 580, 314 N.W. 2d 699; *Davis v. Boise Cascade Corp.* (Minn. 1979), 288 N.W. 2d 680; *Walsh v. Consolidated Freightways, Inc.* (1977), 278 Or. 347, 563 P.2d 1205; *Brudnicki v. General Electric Co.* (N.D. Ill. 1982), 535 F. Supp. 84.) I find these cases persuasive, and would hold as a matter of State common law that plaintiff does not have a cause of action for retaliatory discharge.

In addition, I disagree with the conclusion that plaintiffs' complaint states a cause of action for retaliatory discharge. In my opinion the complaint does not allege facts sufficiently setting forth the elements of the cause of action. The majority opinion states: "[T]he complaint alleged that plaintiff was discharged in retaliation for his refusal to work in the handling of cobalt 60 *while the op-*

*erations were being conducted in violation of regulations promulgated by the Nuclear Regulatory Commission* and published in the Federal Register." (Emphasis added.) (108 Ill. 2d at 509.) That statement is incorrect.

The complaint only alleged that plaintiff was discharged for his "reasonable refusal to work with the Cobalt 60 Unit," and that the unit was "not operated properly and could cause serious and permanent injury." The complaint also alleged that an investigation by the Nuclear Regulatory Commission disclosed certain specified inadequacies in defendant's radiation-safety program. However, it did not, as the majority opinion suggests, allege that any violations existed at the time plaintiff was discharged, or that plaintiff was required to work with the unit while defendant's program was in violation of Federal safety standards. As the appellate court in this case correctly observed, the allegations of unsafe conditions "must be viewed as of the time of plaintiff's discharge, which was on August 20, 1979. The record reveals that the investigations by the NRC occurred on October 12, 1979, and March 11, 1981. There is no indication in the record that any investigation was contemplated nor pending on the date of plaintiff's discharge." 123 Ill. App. 3d 539, 544-45.

Although pleadings are to be liberally construed and formal or technical allegations are not necessary, a complaint must, nevertheless, contain facts necessary to state a cause of action. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145; *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 211.) A complaint fails to state a cause of action when it omits facts, the existence of which are necessary for plaintiff to recover. (*Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 474-75.) Assuming, *arguendo*, that discharge of an employee for refusal to work in handling cobalt 60 while the operations violated Federal safety standards states a claim for retaliatory

discharge, plaintiffs' complaint did not allege sufficient facts showing that to be the case.

For the reasons stated, I must respectfully dissent.

JUSTICE RYAN joins in this dissent.