[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON SIKORSKY MOTION TO STRIKE,
I.
The court can at least say with assurance that it must decide a motion to strike but the wording of the complaint and the issues raised by the motion to strike especially in light of the defendant's memorandum to the motion at least for the court have created difficult issues.
There had been a previous motion to strike by the defendant which the court granted and the defendant then filed a revised complaint which the court feels it has to refer to in some detail.
The complaint identifies the defendant company and refers to the plaintiff's length of employment with the defendant. The third paragraph of the one count complaint states the CT Page 10719 plaintiff's job "involved inspecting helicopter parts provided by various supplier subcontractors to the defendant." Paragraph 4 alleges the plaintiff inspected "parts supplied by subcontractors for helicopters provided under government contract by Sikorsky." Paragraph 5 states the plaintiff rejected parts "despite pressure from subcontractors and from his superiors at Sikorsky to accept parts which violated engineering standards." Paragraph 6 goes on to allege the defective parts were nonetheless used in construction of the army helicopters and that the plaintiff was warned by his superiors that rejection of defective parts could result in his discipline. Paragraph 7 notes that in fact the plaintiff was terminated and paragraph 8 claims the defendant company's actions which resulted in his termination:
 . . . "were in violation of public policy and violated the covenants of good faith and fair dealing existing between the parties, in that said termination was motivated in whole or in party by the plaintiff's actions in refusing to accept substandard and defective helicopter parts from defense subcontractors, and his refusal to participate in knowingly using defective parts in producing helicopters under government contract violating the public policy against government contract fraud set forth in 18 U.S.C. § 1031(a) et seq."
2.
Both sides seem to assume that what was involved here was an at-will employment relationship. A breach of implied covenant action after termination will only lie where the reason for it involves an "impropriety . . . derived from some important violation of public policy." Magnan v. AnacondaIndus., Inc., 193 Conn. 558, 578 (1984), see also Sheets v.Teddy's Frosted Foods, Inc., 179 Conn. 171, 475 (1980).
What is "public policy" under the terms of this doctrine? One court has said that the public policy exception to the usual rule that does not permit a cause of action upon terminating an at-will employment situation
 . . . "must guard against a potential flood of unwarranted disputes and litigation that might CT Page 10720 result from such a doctrine, based on vague notions of public policy. Hence, if there is to be such an exception to the at will employment rule, it must be tightly circumscribed so as to apply only in cases involving truly significant matters of clear and well-defined public policy and substantial violations thereof. If it is to be established at all, its development must be on a case-to-case basis.
 For these reasons the adoption of any such new doctrine must be grounded in a specific factual and legal context resulting from a plenary hearing, at which the proofs and public policy considerations involved will be fully developed and taken into account in the final determination," Pierce v. Ortho Pharmaceutical Corp., 399 A.2d 1023, 1026 (N.J., 1979).
This case was cited in Sheets at page 479. It raises the question as to whether for the public policy exception to apply the plaintiff employee has to allege termination resulted from refusal to violate a state statute. The Pierce
court left open the possibility that the plaintiff doctor in that case could rely on the exception where she claimed she was terminated after refusing to do something which violated the Hippocratic oath. All our court has said is the following:
 "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy," Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. at page 480.
In granting a motion to strike the court in a later case said:
 "The plaintiff has failed to identify any particular public policy affronted by his termination. Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Nevertheless the plaintiff has not alleged that his discharge violated any explicit statutory or constitutional provision. CT Page 10721 Nor has he alleged that his dismissal contravened any judicially conceived notion of public policy. Under the allegations of the present complaint it is unnecessary for us to articulate the limits of the public policy exception any more definitely than we have done previously."
 Morris v. Hartford Courant Co., 200 Conn. 676, 680
(1986)[1]
Reading the language of the complaint here, it is the court's understanding that the plaintiff is basing his claim with reference to the federal statute and not requesting the court to fashion any "judicially conceived notion of public policy." That request would involve the fact based inquiry suggested in Pierce and would not be amenable to a motion to strike procedure.
Throughout the complaint, the plaintiff refers to the role of subcontractors in supplying the parts and the pressure put upon him by subcontractors to accept substandard parts. In the paragraph setting forth his legal claim he refers to his termination being based on his refusal to accept and knowingly use defective parts supplied by contractors under government contractors "violating the public policy against government contract fraud set forth in 18 U.S.C. § 1301(a) et seq." In his reply memorandum, the plaintiff says he is not bringing a cause of action for violation of the federal act, he is merely "pointing to the Major Fraud Act as the proof of the importance of the public policy involved . . . The public policy involved is that the government should not pay for defective helicopter parts which risk the life and limb of its servicemen and invade the public treasury." It is obvious the plaintiff is not suing under the federal statute but he is referring to it to provide the public policy nexus which he claims makes his termination violative of public policy. That is further evidenced by the concluding remarks in the plaintiff's memorandum which assume what is in issue — the legal termination claim is based on what the plaintiff perceives is a violation of public policy set forth in the federal statute. Thus the plaintiff argues that even though a federal not a state statute is involved there is sufficient impact on our citizens to apply the public policy exception to terminations in at-will situations, citing Wheeler v.Catipillar Tractors Co., 485 N.E.2d 372 (Ill., 1985). CT Page 10722
For the purposes of the following discussion the court will in fact assume that a public policy exception to the usual law governing termination can be based on a violation of federal law. The validity of such an assumption will be discussed later in this decision.
3.
Since he has explicitly chosen to base his claim of unlawful termination based on the "impropriety" of the employer in firing him for refusing to accept substandard parts in violation of 18 U.S.C. § 1-31(a) et seq., the plaintiff must show that his termination would affect the policy goals expressed in that act.
Thus in Sheets: "the plaintiff alleged that he had been dismissed in retaliation for his insistence that the defendant comply with the requirements of a state statute, the Food, Drug and Cosmetic Act", 179 Conn. at 480. In Antinerella v.Rioux, 229 Conn. 479 (1994) the court noted that the "application of (the Sheets) doctrine is particularly appropriate . . . when . . . the defendant has acted to accomplish what statutes specifically prohibited from doing" id. at p. 493, referring to Sections 6-45 and 6-46 of the General Statutes.
The relevant portions of 18 U.S.C. § 1031 reads as follows:
"§ 1031. Major fraud against the United States
 (a) Whoever knowingly executes, or attempts execute, any scheme or artifice with the intent —
(1) to defraud the United States; or
 (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, if the value of the contract, subcontract, or any constituent part thereof, for CT Page 10723 such property or services is $1,000,000 or more shall, subject to the applicability of subsection (c) of this section, be fined not more than . . . ."
The difficulty presented by this motion is that two themes are constantly referred to by both sides that have nothing to do with the precise question of what the "public policy" issue question is under Sheets. The public policy behind the Major Fraud Act is to protect the federal government against fraud by contractors and suppliers to the government. Defective ashtrays could have been supplied and used by Sikorsky and the precise legal question before the court would have been the same. That defective parts to a helicopter may have been supplied and used certainly raises the specter of crashes endangering life and property but has nothing to do with the propriety of any Sheets claim in this case leaving aside for now the issue of whether a federal statute can be used to make such a claim.
I believe the defendant reads both the statute and the complaint too narrowly. In discussing the act the defendant conveniently reads subsection (a)(1) and (a)(2) together and argues that there is no allegation of fraud regarding "procurement" nor of a "scheme or artifice" under 18 U.S.C. § 1031(a). Rather, the plaintiff's claim is that helicopters were assembled with parts that did not meet specifications so he has "failed to allege a violation of the very public policy on which he purports to rely."
Giving the complaint its most favorable reading as the court must, it seems clear that the allegation is that a scheme existed between Sikorsky and the subcontractor to countenance the supply and use of defective parts for which the government was footing the bill.
Both sides allegedly knew the parts were defective because the plaintiff said he told his superiors and the fifth paragraph said the subcontractors pressured him to use defective parts. Although it is unstated, I suppose it can be assumed that the government would and should not pay for defective parts and if supplier and manufacturer knowingly use such parts, they would certainly seem to be involved in a "scheme or artifice with the intent — (1) to defraud the United States." CT Page 10724
The defendant also appears to the court to confuse theSheets issue by proposing two different and not necessarily related definitions of "public policy" which it claims stand for the same thing. That is to go back to the basic description of a Sheets claim — the discharged employee must show his or her termination was rooted in an impropriety based on a violation of a public policy as here evidenced by a federal statute. The public policy behind the Major Fraud Act is that the federal government should not be defrauded by schemes between suppliers and manufacturers to use defective parts or equipment in government contracts.
The defendant argues that the plaintiff "falls outside" the protections of the policy expressed by the federal statute because he does not meet all the statutory requirements for civil relief provided to employees who are punished for assisting in prosecutions under the act and does not qualify for the monetary reward permitted in the act because as the act spells out, he did not furnish information on the fraud to his employer (the act itself leaves a loophole in the latter situation if the court determines the employee had a justifiable reason for non-disclosure). But these matters are not concerned with the basic public policy underlying the act — prevention of fraud but rather with remedial steps which it was thought would encourage the accomplishment of that policy goal.
It is an entirely different question as to whether, since the statute sets out certain remedial provisions, even including re-instatement to a fired worker, this would preclude the use of that statute for a Sheets argument when the worker does not otherwise qualify for reinstatement as provided for in the particular statute. That is, has the legislature precluded use of a public policy argument based on this statute which might have been appropriate absent the legislative provisions for relief.
I am not prepared to answer this much more difficult question on a short calendar motion to strike. It requires analysis of legislative history, perhaps industry and prosecutorial practice and a further factual development of what exactly was involved in this case so that a court could consider that protections beyond what is specifically provided for in the federal statute are appropriate. CT Page 10725
4.
The motion to strike, however, is appropriate for another reason. As noted by the courts the public policy exception to the employment at-will doctrine must be "narrowly construed to serve a limited purpose." Battista, 10 Conn. App. at page 497.
Although this issue has not yet been addressed by our courts, I believe the better view is that the mere allegation that a defendant has violated the public policy expressed in a federal law is not legally sufficient to set forth a Sheets
claim. There must be an allegation that such a violation interferes with some important state interest sufficient to raise a public policy concern that would form an exception to the employment at-will doctrine with regard to employee termination. Where the state public policy is based on federal law there must be a substantial connection between the federal law that is violated and the state's own public policies. The federal law must protect an interest that has a substantial impact on state concerns Wheeler v. CaterpillarTractor Co., 485 N.E.2d 372, 376-377 (Ill. 1985), Peterson v.Browning, 832 P.2d 1280, 1282 (Vt., 1992), contra Olquin v.Inspiration Consolidated Copper Co., 740 F.2d 1468, 1475 (1984) (interpreting Arizona law, even though case, perhaps, does not preclude reliance on federal law if its violation involved substantial impact on state, issue not presented by federal statute in that case.
As noted, in this complaint there is no allegation that state public policy concerns are implicated, just a reference to a purported violation of policies enshrined in federal law. If proper allegations are made along these lines, I do not necessarily believe as the defendant seems to suggest that the question of reliance on federal statutory law for a Sheets
claim could be resolved by a motion to strike. The plaintiff might have a difficult task showing the necessary impact on state interests given the specific purpose of this federal statute but that is not now before the court and can best be resolved after discovery by a motion for summary judgment or perhaps at trial.
Corradino, J. CT Page 10726