748

Michael SUSMAN, Plaintiff,

v.

LINCOLN AMERICAN CORPORATION
et al., Defendants.

No. 73 C 1089.

United States District Court,
N. D. Illinois, E. D.

Nov. 3, 1980.

A. Bradley Eben, Chicago, Ill., for plaintiff.

John B. Huck and Randall L. Mitchell, Keehn Landis, Chapman & Cutler, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This is a putative class and derivative action filed in 1973 by Michael Susman ("Susman") on behalf of Consumers National Corporation ("Consumers") and its minority shareholders, alleging various violations of the Securities and Exchange Act of 1934 (the "Act") in connection with the merger of Consumers into Lincoln American Life Insurance Company ("Lincoln Life"), a wholly-owned subsidiary of Lincoln American Corporation ("Lincoln American"). At issue are three outstanding motions: Susman's Motion for Leave To Amend the Amended Complaint and cross-motions for summary judgment respecting alleged violations of Sections 12(g) and 14 of the Act and rules promulgated thereunder.[1] For the reasons stated in this memorandum opinion and order, Susman is granted leave to amend the Amended Complaint, defendants' motion for partial summary judgment is granted and Susman's cross-motion for partial summary judgment is denied.

### Facts

On February 1, 1972 defendant Consumers National Life Insurance Company ("Consumers Life") became a wholly owned subsidiary of Consumers, in a transaction in which Consumers Life shareholders became shareholders of Consumers. As a result, Consumers became for the first time a corporation with more than 500 shareholders

---

1. SEC proxy solicitation Rules 14a 3, 14a 6 and 14a-9.

and over $1,000,000 in assets, thus starting the timetable established by Section 12(g)(1) of the Act:

> Every issuer ... shall ...
>
> (B) within one hundred and twenty days after the last day of its first fiscal year ... on which the issuer has total assets exceeding $1,000,000 and a class of equity security (other than an exempted security) held of record by five hundred or more but less than seven hundred and fifty persons,
>
> register such security by filing with the Commission a registration statement (and such copies thereof as the Commission may require) with respect to such security.... Each such registration statement shall become effective sixty days after filing with the Commission or within such shorter period as the Commission may direct. Until such registration statement becomes effective it shall not be deemed filed for the purposes of section 78r of this title [Section 14 of the Act].

Susman and defendants agree as to the calculations under that timetable. Consumers' fiscal year is the calendar year. Accordingly, the period specified in Section 12(g)(1)(B) ended 120 days after the last day of 1972, or April 30, 1973.[2]

During the last half of 1972, Lincoln acquired at least 64% of the Consumers common stock, which it transferred to its subsidiary Lincoln Life. Some time thereafter the directors of Consumers and Lincoln Life unanimously approved an agreement of merger, contingent upon shareholder approval. Under the merger plan Consumers' shareholders were to receive $8.50 for each share of Consumers' stock they owned, and Lincoln Life would continue as the surviving corporation (a "cash merger," challenged by Susman as a freezeout of the minority shareholders).

In connection with the proposed merger, proxy materials were mailed to Consumers' shareholders April 2, 1973 (it is the non—submission of those materials for prior SEC approval that poses the legal issue between the parties). On April 27, 1973 the shareholders adopted and approved the agreement of merger, effective as of the date of the necessary filings under applicable (Tennessee and Delaware) law. Those filings were made on April 30, 1973, and on that date Consumers was dissolved.

On April 26, 1973 Susman had filed this action alleging numerous violations of the securities law in connection with the transactions. All defendants were served on various dates after May 1, 1973.

Defendants then filed a Motion for Summary Judgment with respect to claims under Sections 12(g) and 14 of the Act and SEC Rules 14a–3, 14a–6, and 14a–9, asserting that because Consumers was dissolved on April 30, 1973 it never had a duty to comply with the registration and proxy rules those provisions establish. For reasons not explained in any now—pending memoranda before the Court, on January 25, 1974 all parties stipulated to the dismissal without prejudice of claims based on alleged violations of Sections 12(g) and 14 of the Act. Susman filed his Amended Complaint on December 11, 1974, deleting claims under those provisions but alleging that the merger had been timed to avoid their application.

Finally, on April 24, 1975, Susman filed (1) a Motion for Leave To File an Amendment to the Amended Complaint that would reinstate the Sections 12(g) and 14 allegations and (2) a cross—motion for summary judgment on those claims. Defendants contest the propriety of allowing such amendments and, in the alternative, reassert their 1973 motion for summary judgment.[3]

---

2. Section 14 of the Act and the Rules promulgated thereunder apply to issues "registered pursuant to Section 78(1)[12(g)]." Thus their applicability is also a function of the same time calculations.

3. There have been two intervening appeals, the most recent of which terminated with the denial of a petition for certiorari earlier this year. Thus consideration of the fully—briefed pending motions by the Judge to whom this case was previously assigned was deferred for several years.

### Susman's Proposed Amendments to the Amended Complaint

Susman tenders five proposed modifications to the Amended Complaint. Defendants do not contest the additions to Paragraphs 10(a) and 10(b). Accordingly, under Fed.R.Civ.P. 15(a), which directs that "leave [to amend] shall be freely given," leave to file those amendments is hereby granted.

Defendants do contest the three other proposed amendments, each of which relates entirely to alleged violations of Sections 12(g) and 14 of the Act and Rules promulgated thereunder. Because the Court's disposition of the cross–motions for partial summary judgment effectively disposes of all claims under those provisions, it is not necessary to discuss the motion to amend in any detail. This Court has considered defendants' objections to the amendments and finds them without merit. Accordingly, Susman's motion to file those amendments is granted, although as discussed in the next section Susman's claims based on those allegations are disposed of by summary judgment.

### Cross–Motions for Partial Summary Judgment

Susman and defendants have submitted cross–motions for summary judgment respecting the alleged violations of Sections 12(g) and 14 of the Act and SEC Rules 14a–3, 14a–6 and 14a–9. At issue in both motions is the effect of Consumers' April 30, 1973 dissolution on any obligation to register its common stock with the SEC under Section 12(g) and any obligation to submit its proxy solicitation materials to the SEC under Section 14 and related Rules.

Susman argues that Consumers' obligation to register its stock "vested" on December 31, 1972, the last day of the fiscal -year in which Consumers first satisfied the Section 12(g) requirements (number of shareholders and value of assets). It is his position that the statute's 120–day period was intended only to allow an issuer adequate time to comply with already–existing and irrevocable registration obligations.

Defendants contend that an issuer cannot be in *violation* of any Section 12(g) registration requirement until *after* the 120–day period has expired. Accordingly, an issuer that ceases to exist during that period cannot by definition violate any duty to register its shares.

■ Apparently Section 12(g) has not previously been construed in this factual context. However, the Court concludes that the plain language of that provision dictates its proper application here. Nothing in the statute suggests that Susman's novel assertion of a "vesting" date, with the subsequent 120–day period a mere leeway for compliance, is valid. Instead, a literal reading of the statute is that a calendar year issuer's *status* is determined by its assets and shareholder makeup at December 31, but that status only starts the 120–day clock running. Susman himself predicates his Amended Complaint (as he must) on an alleged *violation* of the obligation to register, which *violation* cannot take place by definition until the clock has run out.

■ Indeed, that reading is confirmed by the further Section 12(g) provisions that a registration statement only becomes *effective* sixty days *after* it is filed and that it is not deemed filed for purposes of Section 78r (Section 18 of the Act) until that effective date. In turn, Section 14 imposes obligations regarding proxy solicitations only as to "registered securities"–that is, securities as to which a registration statement has been *filed*. So the necessary conclusion is that the proxy solicitation provisions of the Act also never became applicable to Consumers.

Thus there is no warrant in the statute for substituting any concept of "vesting" for the specific language of Section 12(g). To counter that conclusion Susman advances a number of arguments:

First he asserts that under Delaware corporation law "all debts, liabilities and duties" of a merging corporation attach to the surviving corporation. To the same effect, the Consumers–Lincoln Life merger agreement expressly provided that Lincoln

Life would assume all "liabilities, obligations and penalties of Consumers." Accordingly, Susman contends that the Section 12(g) requirements, under Delaware law and defendants' own merger documents, survive Consumers' dissolution and bind Lincoln Life.

That argument is without merit. It wholly fails to address the threshold issue already discussed: the invalidity of the unsupported "vesting" concept. Moreover, even if the "vesting" notion were to be accepted, it could only bind Lincoln Life as to proxy solicitations made by it after Section 14 had assertedly become applicable to it: that is, after the presumed "filing" date of the arguably required registration statement (60 days after April 30, 1973, or June 29, 1973). And at that date Lincoln Life's sole shareholder was *Lincoln*, not Susman and his counterparts. It would avail Susman nothing to have the proxy solicitation rules apply at that time.

Susman's second contention is based on Section 12(g)'s express provisions for deregistration by several means.[4] Dissolution of a Section 12(g) corporation is not itself one of the defined events permitting deregistration under those provisions, nor have defendants otherwise adhered to the "deregistration" procedures of the Act. Thus, Susman contends, there is no basis for assuming defendants' obligations were extinguished.

Again, Susman's argument begs the threshold question by its reliance on the "vesting" concept. Moreover, in *Bastian v. Lakefront Realty Corp.*, 581 F.2d 685 (7th Cir. 1978), our Court of Appeals held that an issuer that had failed to register under Section 12(g) and subsequently became entitled to "deregistration"[5] was not required to engage in the "idle and useless" act of applying for deregistration in order to extinguish its Section 12(g) obligations. That decision definitively disposes of Susman's second contention.

Susman next argues that defendants' construction of Section 12(g) would lead to results that could not have been intended: An issuer "could perpetually escape registration by the simple expedient of merging into a private corporation within 120 days after registration is required." In fact, Susman asserts, that is precisely what occurred in this case, as indicated by the deposition admission of defendant Bernstein (President of Lincoln) that the purpose for the timing of the merger was to avoid registration.

Of course a merger into a private corporation is no more than the precise legal equivalent of a decline in a registrant's shareholders below the 300 number. And as just noted, *Bastian* teaches that to be a perfectly legitimate basis for deregistration. As for defendant Bernstein's statement that the timing of the merger was calculated to avoid registration (as opposed to the *reason* for the merger), the Court finds that decision no more legally significant than the filing of a lawsuit shortly before the expiration of a statute of limitations period.

Finally, Susman argues that even if the obligation to register under Section 12(g) were extinguished upon consumer's dissolution, its distribution of the April 1973 proxy materials without SEC approval constituted a violation of Section 14(a). In that respect Susman relies on language from *Reserve Life Insurance Co. v. Provident Life Insurance Co.*, 499 F.2d 715, 724 (8th Cir. 1974), in which the Court of Appeals for the Eighth Circuit noted that "[t]he *obligation* to register under § 12 brings into play the provisions of § 14(a) of the 1934 Act...." (emphasis added). Susman construes that statement to require compliance with the proxy solicitation requirements immediately at the end of the fiscal year in which the issuer obtains Section 12(g) status—even *before* the due date of timely–filed registration materials!

---

**4.** See Sections 12(g)(3) and (4) of the Act.

**5.** In that case, the number of stockholders in the issuer company fell below 300, entitling the

company to deregistration under Section 12(g)(4).

As already stated, such an argument is belied by the specific language and interaction of Sections 12(g)(1) and 14(a). By their terms no violation of the proxy solicitation rules can occur until after the *effective* date of a registration statement–sixty days *after* its filing due date of April 30, 1973, even if Susman's argument as to registration were accepted (as it is not) by this Court. *Reserve Life* is wholly consistent with that conclusion, for in that case the issuer had failed to register its securities, and then distributed proxy materials well *after* expiration of the Section 12(g) 120–day period. Thus Susman's final argument is equally untenable.

### Conclusion

As already stated, Susman's Motion for Leave To Amend the Amended Complaint is granted, but paragraphs 3, 4, and 5 of the offered amendment are subject to this Court's concurrent granting of defendants' motion for summary judgment. For the reasons discussed at length in this opinion, this Court concludes that:

1. There is no genuine issue as to any material fact as to Susman's claims under Sections 12(g) and 14 of the Act or the related SEC Rules.

2. Defendants are, and Susman is not, entitled to judgment on such claims as a matter of law.