**Michael SUSMAN, Plaintiff,**

v.

**LINCOLN AMERICAN CORPORATION, et al., Defendants.**

**No. 73 C 1089.**

United States District Court, N. D. Ill., E. D.

June 3, 1981.

A. Bradley Eben, Chicago, Ill., for plaintiff.

Keehn Landis, Chapman & Cutler, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In 1973 Michael Susman ("Susman") filed this class and derivative action on behalf of Consumers National Corporation ("Consumers") and its minority stockholders. Susman asserted various violations of the Securities and Exchange Act of 1934 (the "Act") in connection with the merger of Consumers into Lincoln American Life Insurance Company ("Lincoln Life"), a wholly-owned subsidiary of Lincoln American Corporation ("Lincoln American"). Defendants contend that changes in the law as to Susman's class claims make it appropriate to grant judgment on the pleadings, or in the alternative to dismiss those claims.[1] For the reasons stated in this memorandum opinion and order defendants' motion is denied.[2]

■ Facts leading to this litigation have been discussed in detail in two prior opinions of this Court[3] as well as in the opinions of other Judges who have been called upon to rule on the numerous motions the case has produced. There is no need for extended restatement. Briefly, on April 27, 1973 the stockholders of Consumers voted to merge with Lincoln Life. Under the merger agreement Lincoln Life continued as the surviving corporation and Consumers' minority stockholders received $8.50 for each share of stock they owned (a so-called "cash merger"). At the time of the merger Lincoln American owned some 64% of the Con-

1. Defendants originally moved for judgment or dismissal as to Susman's entire Amended Complaint (the "Complaint"). In his memorandum in opposition Susman pointed out that the Complaint's derivative claims would remain intact even if defendants' arguments were to prevail, and defendants replied by limiting their motion to the class claims.

2. Susman has also argued that defendants' motion—in substantial part a rerun of a motion to dismiss filed in 1973 and denied by Judge McGarr in 1974—is barred by the law of the case doctrine. Judge McGarr's order was of course interlocutory. It is technically possible

that prior interlocutory orders might have been submitted for review in the two appeals in this case, 561 F.2d 86 (7th Cir. 1977) and 587 F.2d 866 (7th Cir. 1978). They were not in fact (the appeals dealt with the wholly unrelated issue of disqualification of counsel for the plaintiff class and with other grounds on which the trial court had *granted* dismissal), and the Court is unaware of any authority for applying law of the case in the same strict way as res judicata (to questions that *might* have been so litigated).

3. See this Court's Opinions of November 3, 1980, 500 F.Supp. 748, and February 12, 1981.

sumers common stock and of course voted in favor of the merger. Susman concedes that under Delaware law Lincoln American's 64% ownership was sufficient to carry the merger vote even if all Consumers minority stockholders had voted in opposition.

On April 26, 1973, one day before the merger vote, Susman (who then owned 200 shares of common stock of Consumers) filed this action charging that defendants were engaged in a freezeout of Consumers' minority stockholders. Susman claims defendants violated Section 10(b) of the Act and Securities and Exchange Commission ("SEC") Rule 10b–5 by issuing false and misleading proxy statements relating to the election of a Lincoln American controlled Board of Directors (the "1972 proxy statement") and to the merger vote (the "1973 proxy statement"). Specifically the Complaint alleges that the proxy statements:

> misrepresented . . . the financial position of Consumers by (i) substituting for Generally Accepted Accounting Procedures ("GAAP") figures, financial statements which were not so prepared, (ii) misstating Consumer[s'] . . . assets, (iii) omitting financial statements with respect to Lincoln Life and Lincoln American, (iv) disguising the dominance of the Consumers . . . Board of Directors by Lincoln American, (v) omitting appraisals of Consumers . . . as [a] going concern . . . [and] (vi) omitting to disclose that Lincoln American had paid $11.00 per share for 324,000 Consumers . . . shares (and control) in 1972, although the acquisition occurred less than one year before the tender offer at $8.50.

### Defendants' Legal Theory

Defendants urge that Susman has failed to state a cause of action under Section 10(b) of the Act and Rule 10b–5. In their view the alleged omissions and misstatements on which Susman's Rule 10b–5 claim is predicated fail to satisfy the materiality requirement of the Rule.

There is no dispute between the parties as to two general propositions:

1. Because Lincoln Life controlled 64% of the Consumers common stock "no vote of the minority shareholders . . . could have altered or affected the merger, and under these circumstances, no omission or misrepresentation in the proxy could be deemed material so far as the merger itself is concerned" (this quote is from defendants' memorandum).

2. Under those circumstances Susman's only possible Rule 10b–5 claim would be that the alleged omissions and misstatements were "material" to his state remedies—that is, due to the omissions and misstatements Susman lacked information necessary for him to pursue such remedies. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

But defendants argue that such materiality is belied by Susman's having filed this action, including a claim for injunctive relief, *before* the merger vote. Defendants reason that if Susman had enough information to file this action, by definition he also had enough information to pursue state remedies. It would then follow that any alleged omissions or misstatements cannot be considered material to his ability to seek state relief.

Susman has responded by claiming he has been disadvantaged by the alleged omissions and misstatements in the following respects, some or all of which give rise to a Rule 10b–5 cause of action under such cases as *Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641 (3d Cir. 1980) and *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326 (7th Cir. 1969):[4]

1. Susman was precluded from effectively bringing "objections, arguments, public pressure and lobbying efforts" to bear on defendants before the merger vote. Faced with such informed opposi-

---

4. Even though defendants have not made the point in just these terms, caution must be exercised in assuming the continued viability of *Swanson* after *Santa Fe* and the narrowed view of Rule 10b–5 actions it represents. *See e. g.* our Court of Appeals' recent decision in *Panter v. Marshall Field & Co.,* 646 F.2d 271 (7th Cir. 1981).

tion and "the potentially expensive appraisal rights of minority shareholders, [Susman reasons] the [defendants] might well have chosen to alter the plan . . . or abandon it entirely" (415 F.2d at 1332).[5]

2. Susman was "lulled into inaction" and thus did not pursue injunctive relief with the vigor that would have been possible had all material facts been known.

3. Susman was effectively prevented from obtaining a "fairness hearing" to which he would have been entitled under Delaware law.

4. Minority stockholders including Susman would not have relinquished their appraisal rights had they possessed knowledge of the "material facts."

Defendants do not deny that omissions or misstatements having such effects could be actionable under Rule 10b–5.[6] Instead they claim that Susman's filing of this action before the merger vote demonstrates conclusively that he in fact possessed sufficient information (despite the alleged omissions and misstatements) to "avoid" or overcome all of the effects he claims to have resulted from defendants' deception.

■ Defendants' analysis cannot prevail in the present posture of the case. As bizarre as it might seem in an eight-year-old lawsuit, the case is still at the pleading stage so as to invoke the principle stated in

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957):

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[7]

■ In essence Susman acknowledges that the state of his knowledge before the merger vote was sufficient to warrant his filing a lawsuit. But because of defendants' alleged omissions and misstatements in the proxy materials, Susman contends that he (and other minority stockholders) were insufficiently informed to pursue injunctive relief or a fairness hearing effectively or to decide to insist on appraisal rather than acquiesce in the sale of their shares.[8] Neither side has adduced any authority treating directly with such a "partial knowledge" concept, but it appears arguably maintainable under the Supreme Court's expansive definition of "materiality" for Rule 10b–5 cases in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 439, 96 S.Ct. 2126, 2127, 48 L.Ed.2d 757 (1979):

An omitted [or misrepresented] fact is material . . . if there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted

---

5. This claim, recognized in *Swanson*, has very possibly failed to survive *Santa Fe*. Because other claims do remain in the case in any event, the Court will reserve ultimate judgment on this issue until the case is ready for trial, when the issue can be examined against the then state of the law applying Rule 10b–5.

6. When *Santa Fe* was decided, Delaware case law indicated that the *sole* remedy of a minority stockholder under the short form merger statute was appraisal. On that basis the Supreme Court held that the plaintiff's ability to obtain that remedy had not been affected by any misstatements or omissions, so that the Rule 10b–5 claim was groundless. Later Delaware cases have found fairness hearings, injunctive relief and appraisal all to be available to minority stockholders in the case of *freeze-out* mergers. *See, e. g., Singer v. Magnavox*, 380 A.2d 969 (Del.1977). Indeed remedies not contemplated in *Santa Fe* as to short form

mergers have since been recognized by Delaware courts.

7. Defendants' motion for judgment on the pleadings under Rule 12(c) is subject to the same standard. *See generally* 5 Wright and Miller, Federal Practice and Procedure § 1368 (1969).

8. In this respect the Court notes that Susman's Amended Complaint, filed a year and a half after the original Complaint, for the first time alleged omissions and misstatements in connection with the 1972 proxy statement and substantially expanded the allegations as to the 1973 proxy statement. It is fair to assume that Susman would have put his best foot forward in filing the original Complaint, so that the additions would reflect information not fully available to him before the merger.

[or misrepresented] fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

Merely filing a complaint supports the inference that the plaintiff has some knowledge of or belief in defendants' wrongdoing. Nonetheless it is possible that such a degree of knowledge could also be insufficient to allow the effective immediate pursuit of extraordinary remedies (such as injunctive relief or relief afforded under a fairness hearing) or to make an informed decision about invoking appraisal rights. If, as Susman claims, that situation exists here *because* of defendants' omissions and misstatements, it can hardly be concluded, consistent with *TSC Industries*, that such deception is immaterial as a matter of law.

Susman's allegations, and therefore his claim to relief under Rule 10b–5, may prove unfounded. However at this juncture the Court is not permitted to make that determination on the pleadings, for Susman has met his *Conley* burden.[9]

### Conclusion

Defendants' motion for judgment on the pleadings or alternatively to dismiss is denied.

---

**9.** This Court expresses no view on the issue of causation in a Rule 10b–5 action based on the preclusion of a state remedy. Compare *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), *cert. denied* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978) with *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273 (9th Cir. 1979). Cases from other Circuits, including our own Court of Appeals' decision in *Wright v. Heizer Corp.*, 560 F.2d 236 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), appear to occupy other sectors of the causation spectrum.