Jay RUBIN, Plaintiff,

v.

RUDOLF WOLFF COMMODITY BRO-
KERS, INC., a corporation, Defendant.

No. 85 C 6338.

United States District Court,
N.D. Illinois, E.D.

May 22, 1986.

Joel J. Bellows/Anne Edelman Larsen,
Bellows & Bellows, Chicago, Ill., for plain-
tiff.

James L. Fox/Donald P. Colleton,
Abramson & Fox, Chicago, Ill., for defend-
ant.

MEMORANDUM OPINION
AND ORDER

ASPEN, District Judge:

In this suit Jay Rubin ("Rubin") alleges
that Rudolf Wolff Commodity Brokers, Inc.
("Rudolf Wolff") breached his two-year em-
ployment contract by firing him. Rudolf
Wolff has moved to dismiss or for summa-
ry judgment, arguing (among other things)
that the alleged contract is unenforceable
under the statute of frauds. We agree for
the reasons stated below, and therefore
grant the motion.

A. *The Motion to Dismiss*

1. *The Complaint*

The one-count complaint and attached ex-
hibits set forth the following facts, which
we assume to be true for purposes of the
motion to dismiss. Rudolf Wolff is a bro-
ker of commodity futures, incorporated and
doing business in New York. In February
1984 it decided to open an office in Chicago.
On March 1, 1984, it hired Rubin under an
oral agreement to manage the Chicago of-
fice, beginning March 16, 1984, for a mini-
mum of two years. The agreement was
confirmed by a letter to Rubin from Rudolf
Wolff's president, Bruce Cleland, which
read in relevant part:

Upon commencement of your employ-
ment with Rudolf Wolff Commodity Bro-
kers Inc., we will loan you a sum of

$7,500. The loan will bear interest at the rate of 12% per annum and you will be asked to sign a personal note recognizing this debt. Should you leave Rudolf Wolff's employ for any reason inside a 24 month period beginning with the commencement of your employment, the loan, together with accrued interest, will be repayable in full. Should you still be in the Company's employ 24 months after the commencement of your employment, the loan, together with accrued interest, will be forgiven in its entirety.

Complaint Exhibit B, ¶ 3. Rubin worked for Rudolf Wolff until March 31, 1984, when he was fired without cause. He lists various items of damage, totalling $50,000.

Although there is evidence before us contradicting some of these facts, we have chosen first to consider Rudolf Wolff's motion to dismiss, confining our inquiry to the complaint. After ruling on that motion, we will turn to the alternative motion for summary judgment.

### 2. *Governing Law*

■ At the outset, we must decide what law to apply to this diversity suit. As usual, the parties assumed without discussion that Illinois law governs. To see whether this assumption is correct, we start with Illinois' choice of law rules. *See Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although the situation in Illinois is in flux, we held recently that Illinois courts now generally apply the modern "most significant relationship" test to contract cases. *See Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 803–04 (N.D. Ill.1985). Taken from the Second Restatement of Conflicts, § 188 (1971), that test lists five factors for the Court to consider in deciding which State's law to apply: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the situs of the subject matter of the contract; and (5) the domicile residence, place of incorporation and place of business of the parties. *Id.* at 804. Factor (5) cancels out between New York and Chicago.

While factors (1) and (2) point toward New York, *see* below at 6–7, because factor (3) points so strongly to Illinois, we hold that Illinois has the more significant contact with this case. While the parties agreed to terms in New York, just about everything else in this case centers in Chicago. Rubin lives here and was to perform here. He was to work in Rudolf Wolff's Chicago office, where it was to perform as well. His discharge, the alleged breach, happened in Illinois. In short, Illinois' ties to this case are stronger than New York's, and its law should govern.

### 3. *Statute of Frauds*

■ The Illinois Statute of Frauds, Ill. Rev.Stat. ch. 59, § 1 (1985), reads in relevant part:

[N]o action shall be brought … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

The alleged contract Rubin relies upon, one for a minimum of two years' employment, is obviously one "not to be performed within the space of one year" and thus is within the statute. *See Payne v. AHFI/Netherlands, B.V.*, 522 F.Supp. 18, 23 (N.D.Ill. 1980) (Shadur, J.); *Gilliland v. Allstate Insurance Co.*, 69 Ill.App.3d 630, 632–33, 26 Ill.Dec. 444, 446–47, 388 N.E.2d 68, 70–71 (1st Dist.1979); Restatement (Second) of Contracts, § 130, Comment e, Illustration 15 (1981). While this part of the statute has been construed narrowly, *see, e.g., Gilliland*, 69 Ill.App.3d at 632–33, 26 Ill.Dec. 446, 388 N.E.2d at 70 (contract unenforceable only if impossible to perform within one year), Rubin does not contend that the alleged contract is not within the Statute, but rather argues that the March 2, 1984 letter Cleland sent him satisfies the statute. We disagree.

The Cleland letter, while confirming the existence of an oral contract as well as some of its terms, does not constitute a "memorandum or note ... signed by the party to be charged"[1] that the contract was to last two years. The crucial paragraph (3) cannot reasonably be read as a promise of two years' employment. That paragraph merely states that Rudolf Wolff would forgive the $7,500 it lent Rubin if he was still with Rudolf Wolff after two years. The paragraph's language clearly contemplated the possibility Rubin would leave before the end of two years. Just as clearly, it contains no express or implied promise of two years' employment. Mindful of our role in ruling on a motion to dismiss, we scrutinized the paragraph in search of a reasonable inference of such a promise. But the language admits no such inference. To satisfy the statute, the language would have to state "with reasonable certainty the essential terms of the unperformed promises in the contract." Restatement (Second) of Contracts, § 131(c) (1981). Duration is an "essential term" of the alleged contract, and the writing clearly does not speak to duration "with reasonable certainty." We therefore hold that the alleged contract is within the Statute of Frauds and unenforceable.

*Payne*, cited above, supports this holding. There a written memorandum of the employer stated that it "expected" the employee to remain with the company for two years. Following *Buian v. J.L. Jacobs & Co.*, 428 F.2d 531 (7th Cir.1970), the *Payne* court held that the statement was merely one of expectation, not a promise which altered the customary employment relationship terminable at will. 522 F.Supp. at 22. The Court also held that an alleged oral promise of two years' employment was barred by the Statute of Frauds. The Cleland letter, like the note in *Payne*, says no more than an expectation of two years' employment. And even that expectation was less than certain: "Should you still be in the Company's employ...." Thus, on its face the letter does not disturb the presumption that the employment relationship was at will. Similarly, any firm oral promise which might have been made to Rubin falls within the Statute of Frauds. Rubin cites and we have found no case in support of taking this case out of the statute. Nor does he offer any reason to do so. Nor does he offer any reason to distinguish *Payne*, which we find to be on point. Accordingly, we conclude the complaint fails to state a claim upon which relief may be granted, and Rudolf Wolff's motion to dismiss is granted.

### B. *The Summary Judgment Motion*

Although our above holding is dispositive, we alternatively grant Rudolf Wolff's summary judgment motion. The undisputed facts described below which Rudolf Wolff relies upon could spur Rubin to try to amend his complaint, were we to base our opinion only upon the complaint as now written. Thus, we proceed further to preempt what would be a meritless motion to amend.

#### 1. *Undisputed Facts*

Most of the facts stated below come from Rubin's own deposition testimony. Rubin and Cleland had been friends for several years before 1984. When Cleland went to work for Rudolf Wolff, he and Rubin often talked informally about the possibility of Rubin signing up with Rudolf Wolff. On March 1, 1984, Rubin went to New York with Nancy Johnson, who had been hired to run Rudolf Wolff's new Chicago operation. Meeting with Rubin outside of Johnson's presence, Cleland offered Rubin a salary of $42,500 (the same he was making with his current employer) a $10,-000 Christmas bonus, and a $7,500 loan which he could use to pay back a debt he owed to his current employer. Rubin ad-

---

1. The letter attached to the complaint is not signed, and Rudolf Wolff has not produced a signed copy. For purposes of this motion to dismiss, we have assumed that a signed copy exists and that the "signing" requirement of the statute is satisfied. *Cf.* Restatement (Second) of Contracts, § 137 (1981) (loss of memorandum does not deprive it of effect under the statute, if its contents can be proved by an unsigned copy and oral evidence).

mitted in his deposition that Cleland made *no* promises about the duration of his employment:

Q. Was [sic] there any discussions as to how long you were to work for Rudolph [sic] Wolff?

A. How long I would be employed there?

Q. Yes.

A. No.

Q. Any discussions ever held as to how long you would be employed there?

A. No, I don't see why that would have been necessary.

     \*    \*    \*    \*    \*    \*

Q. And, as best you recall, you were— the length of your employment, the term of your employment was not discussed, I think you said, is that correct?

A. That's right.

Q. That you had a handshake with [Cleland] and that was it?

A. Yes.

Q. But there was no discussion as to—

A. Not as to the length of my employment with them, no.

Q. —as to whether it would be for a term of years or life or anything—

A. No.

Q. —like that, or for anything else like that, is that correct?

A. That's correct.

Q. All right.

A. I don't think that's standard to accept a new job and say that you're only going to take it for only six months or two years.

Q. Uh-huh.

A. No. I don't think the term of employment is usually discussed when it comes to applying for a job with a company you're seeking to get hired by or when they hire you on the job.

Rubin Deposition at 80–81, 88–89. *See also id.* at 120–121 (no discussion with Cleland of duration after March 1). Rubin also admitted that the March 2 letter confirmed all of the understandings reached at the previous day's meeting.

Rubin started work on March 16, 1984. But he and Johnson grew dissatisfied with each other, and Rubin felt he was being mistreated. On July 18, 1984, Johnson asked for and received Rubin's resignation. He did not mention any two year commitment. Rudolf Wolff forgave one-eighth of his $7,500 loan and gave him some severance pay.

Later in July, Johnson rehired Rubin, this time as a "pit broker," dealing in Swiss Francs. She offered, and Rubin accepted, the same annual salary, a lower Christmas bonus of $7,500 and the rest of the calendar year to pay off the rest of the loan. Rubin testified that he asked for, and received, an oral promise that he would work in the new position for at least twelve months, beginning August 10. Rubin felt the new arrangement was fair.

Rubin worked in the "trading pits" through the rest of 1985. He received his Christmas bonus and used it to pay off the rest of his debt to Rudolf Wolff. In early 1985, Johnson twice reworked Rubin's compensation scheme so that he earned a combination of salary and commissions on trade. On March 28, 1985, Rubin made a serious mistake on a large order, costing Rudolf Wolff $6,537.50, and Johnson fired him.

2. *Summary Judgment Standards*

The Court can grant Rudolf Wolff's motion for summary judgment only if it can show that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). We must view the evidence in the light most favorable to Rubin, and indulge him all reasonable inferences from the evidence. *See, e.g. Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). If Rudolf Wolff cannot meet its "strict burden," its motion fails, even if Rubin were to mount no opposition. *Id.* But if Rudolf Wolff does carry its burden, the burden shifts to Rubin to create a genuine issue of material fact; in

meeting this burden, Rubin must produce relevant evidence or affidavits and not merely rely on bare pleadings or bald assertions. *See* Fed.R.Civ.P. 56(e); *Big O*, 741 F.2d at 163.

### 3. *The Alleged Two-Year Agreement*

█ Rubin's testimony unequivocally establishes that Cleland made no promise of two years' employment, contrary to what is alleged in the complaint. In the face of his repeated admissions of this fact, the Statute of Frauds does not even come into play, since the alleged promise was concededly never made. Rubin has admitted, in effect, that his employment relationship was at will, and thus his July 1984 termination was not actionable. *See Payne*, 522 F.Supp. at 22–23.

The only thing which gives us brief pause in reaching this holding is the affidavit Rubin submitted in response to Rudolf Wolff's motion. In paragraph 4 he flatly contradicts his deposition testimony and asserts:

> It is, and at all times relevant was, my understanding of paragraph 3 of Bruce Cleland's letter of March 2, 1984, that I would be employed by Rudolf Wolff for a minimum of two years in order to receive the forgiveness of the funds paid to Chicago Grain [his former employer] on my behalf.

When a party tries to create a genuine issue of fact by submitting an affidavit which contradicts clear deposition testimony, the Court must disregard the affidavit, unless the affiant shows he was confused at the deposition or if the affiant sets forth newly discovered evidence. *See, e.g., Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104–05 (7th Cir.1985); *see also Selsor v. Callaghan*, 609 F.Supp. 1003, 1008–10 (N.D.Ill.1985) (Aspen, J.) (striking sham affidavit). Rubin offers no reason for contradicting his deposition testimony. Following *Miller*, we disregard his affidavit to the extent it conflicts with his deposition admissions. Thus, we adhere to our conclusion that there is no genuine factual issue that no promise of two years' employ-

ment was made to Rubin, and that he was therefore an at-will employee. But even if we were to consider his affidavit our conclusion would not change. Paragraph 4 merely says that Rubin subjectively read the letter as a promise to employ him for two years. Even if that was his subjective reading, the Court must (and already did) read the letter objectively: it cannot reasonably be read to make such a promise.

Rubin offers no other reasons for enforcing the two-year contract alleged in his complaint. Most of his brief focuses on alleged factual disputes concerning his treatment and discharge. These facts are irrelevant to whether there was a two-year contract in the first place and, if so, whether it is enforceable under the Statute of Frauds. Thus, these purported factual disputes are red herrings, as they are not issues of "material" fact.

### 4. *The July 1984 One-Year Agreement*

Anticipating that Rubin might try to amend his complaint to allege that his March 1985 firing breached his July 1984 oral agreement with Johnson, under which he was rehired, we will briefly address the legal import of that contract. Like the alleged two-year contract, it is clearly barred by the Statute of Frauds and unenforceable. Rubin makes no argument to the contrary, even though Rudolf Wolff raised the issue. Accordingly, we hold that the alleged one-year agreement does not provide Rubin an alternate, unpled, basis for relief.

### C. *Conclusion*

For the foregoing reasons, Rudolf Wolff's motions to dismiss and for summary judgment are granted as alternate holdings. Although Rubin's claim borders on frivolous, we deny Rudolf Wolff's Rule 11 motion to the extent it complains of the filing and conduct of the suit. However, Rule 11 sanctions are appropriate with respect to Rubin's sham affidavit. Rubin's *counsel* (not Rubin) is hereby ordered to reimburse Rudolf Wolff for the attorneys' fees and costs it incurred in preparing its reply brief, which was devoted largely to

responding to the affidavit and other irrelevant facts Rubin raised. Rudolf Wolff may submit a bill of costs and fees within seven days. Rubin's counsel may respond seven days thereafter, if he so chooses. It is so ordered.