**W. Iain MacDONALD–SMITH, Plaintiff,**

v.

**FMC CORPORATION and FMC Overseas, Ltd., Defendants.**

No. 87 C 3291.

United States District Court, N.D. Illinois, E.D.

May 19, 1989.

Donald C. Shine and Gregory C. Ward, Nisen, Elliott & Meier, Chicago, Ill., for plaintiff.

Joseph A. Cari, Jr. and Holly A. Hirst, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, W. Iain MacDonald–Smith, has filed this two-count diversity action against defendants, FMC Corporation and FMC Overseas, Ltd. (collectively, "FMC"). In Count I of the complaint, plaintiff alleges that FMC breached an employment agreement. In Count II, plaintiff alleges that his discharge was wrongful or retaliatory. FMC has moved for judgment on both counts of the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, FMC's motion for judgment on Count I of the complaint is granted in part and denied in part, and FMC's motion for judgment on Count II of the complaint is granted.

## I. FACTS

This dispute arises over the termination of plaintiff's employment and certain circumstances preceding his termination. In January 1979, FMC hired plaintiff to work for its Agricultural Chemical Group as a zone manager for East, Central, and Southern Africa. Initially, plaintiff was based in Nairobi, Kenya.

In March, 1984, the parties agreed that plaintiff would be reassigned to Johannesburg, in the Republic of South Africa, effective May 1, 1984. The parties executed a six-page Letter of Understanding dated March 26, 1984 ("the 1984 letter agreement"), which sets forth various terms and conditions of plaintiff's assignment in Johannesburg. It provides for termination by either party. It also contains the following language: "The terms and conditions of your expatriate assignment will be reviewed and revised should your assignment to Johannesburg exceed five years."

During October and November 1984, plaintiff and FMC entered into an addendum to the 1984 letter agreement. The addendum provides that: "You are assigned to and receive a portion of your compensation from an FMC subsidiary. Your U.S. payroll disbursing agent has been changed to FMC Overseas, Ltd."

FMC Overseas, Ltd. is a wholly owned subsidiary of FMC Corporation.

In January 1985, FMC notified plaintiff by letter of its decision to reduce the expatriate premiums of all expatriate FMC employees over a period of several years. Plaintiff objected to the reduction based on the terms of the 1984 letter agreement. FMC responded to plaintiff's objection in writing. In an interoffice memorandum dated April 12, 1985, FMC assured plaintiff that it had reviewed the terms of his 1984 letter agreement and that it agreed to continue his expatriate premiums at the levels set forth in that letter agreement until May 1, 1989.

Nevertheless, on October 1, 1986, FMC hand-delivered to plaintiff for his signature a "Revised Letter of Understanding as of January 1, 1987, for Assignment at Johannesburg, South Africa." This "revised letter," among other things, proposed to reduce plaintiff's compensation. Upon receipt of this letter, plaintiff expressed his objections to his Area Director, Guy Gelat. According to plaintiff, during a telephone conversation with Gelat on October 31, 1986, Gelat advised plaintiff that he should disregard the letter of October 1, 1986 because FMC would continue to honor the terms set forth in the 1984 letter agreement until May 1, 1989. Several days later, on November 4, 1986, plaintiff sent to Gelat an interoffice memorandum purporting to confirm the contents of their conversation on October 31, 1986.

After failing to receive a response to his memorandum of November 4, 1986, plaintiff again telephoned Gelat on November 21, 1986. According to plaintiff, during this conversation, Gelat again assured plaintiff that FMC would honor the terms set forth in the 1984 letter agreement until May 1, 1989. On the same day this second conversation occurred, plaintiff sent a telex which purported to confirm the contents of this conversation and requested confirmation from FMC in writing.

Plaintiff received no written response from FMC until December 10, 1986. On that date, FMC sent to plaintiff for his signature a second "Revised Letter of

Understanding as of January 1, 1987, for Assignment at Johannesburg, South Africa." This letter purported to confirm the terms and conditions of his expatriate assignment in South Africa. In a letter to FMC dated January 15, 1987, plaintiff reiterated his objections to this second "Revised Letter of Understanding" based on the terms of the 1984 letter agreement and the repeated assurances from FMC that it would honor the terms of that letter agreement until May 1, 1989. Although plaintiff requested that FMC respond to his letter, he received no response.

During February 1987, plaintiff's bank informed him that the amount of monthly compensation routinely deposited by FMC into plaintiff's account had been changed by FMC. After being so advised, on February 5, 1987, plaintiff wrote to FMC, protesting this change and requesting an explanation. Although plaintiff requested a response from FMC, he did not receive one as of the date of his termination.

While plaintiff, Gelat, and another FMC employee toured plaintiff's zone in Zimbabwe during February 1987, Gelat informed plaintiff that he was being terminated by FMC. On February 24, 1987, FMC confirmed plaintiff's termination in a written memorandum to him stating that it was eliminating his position in South Africa.

Based on these allegations, plaintiff filed this two-count complaint against FMC, alleging breach of his employment agreement and wrongful or retaliatory discharge. FMC has moved for judgment on both counts of the complaint.

## II. DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Susman v. Lincoln American Corp.,* 517 F.Supp. 931, 934 n. 7 (N.D.Ill. 1986). Thus, in deciding such a motion, we must accept all well-pleaded allegations of the complaint as true, and we may dismiss the action only if the plaintiff "can prove

no set of facts in support of his claim which would entitle him to relief." *Susman,* 517 F.Supp. at 934 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Harris v. WGN Broadcasting Co.,* 650 F.Supp. 568, 573 (N.D.Ill.1986). Guided by these standards, we examine the substance of each count of the complaint.

### A. Count I—Breach of Contract

In the first count of his complaint, plaintiff alleges two separate and distinct acts of breach by FMC. First, based on plaintiff's characterization of the 1984 letter agreement as an employment contract for a guaranteed minimum period of five years, plaintiff asserts that FMC breached the agreement by terminating him prior to the expiration of the five-year term. Second, plaintiff claims that FMC breached the 1984 letter agreement prior to terminating him by unilaterally altering the terms of his compensation as set forth in that agreement. We address each of these claims separately.

#### 1. Breach Arising From Termination Itself

Plaintiff interprets the 1984 letter agreement as an employment contract for a guaranteed minimum period of five years. To support this interpretation, plaintiff relies on that language in the 1984 letter agreement which states that FMC would review and revise the terms and conditions of plaintiff's expatriate assignment "*should* [his] assignment to Johannesburg exceed five years" (emphasis supplied). According to plaintiff, FMC breached the 1984 letter agreement by terminating him prior to the expiration of the five-year term.

While FMC agrees that the 1984 letter agreement governed the terms and conditions of plaintiff's assignment to Johannesburg, FMC challenges the breadth of plaintiff's interpretation of the agreement. Specifically, FMC contends that the language cited by plaintiff is clearly conditional and, therefore, is inadequate to create an employment contract of fixed duration. FMC also points out that the 1984 letter agree-

ment itself contemplates termination by either party, making the employment relationship terminable "at will." We agree with FMC.

First, courts interpreting Illinois law have repeatedly held that "expectancy" language akin to that in the 1984 letter agreement does not transform an agreement into an employment contract for a fixed period.[1] *See, e.g., Buian v. J.L. Jacobs & Co.*, 428 F.2d 531, 532–33 (7th Cir. 1970) (language in employment contract stating that "[i]t is scheduled that your assignment in Saudi Arabia will continue for a period of eighteen (18) months," did not guarantee any specific term of employment); *Rubin v. Rudolf Wolff Commodity Brokers, Inc.*, 636 F.Supp. 258, 260 (N.D. Ill.1986) (language in employment contract stating that "[s]hould you still be in the company's employ 24 months after the commencement of your employment ..." contained no express or implied promise of two years' employment); *Payne v. AHFI/Netherlands, B.V.*, 522 F.Supp. 18, 22 (N.D.Ill.1980) (language in employment contract stating that "[i]t is expected that the employee will remain in the foreign post for the duration of the project which is expected to be approximately two (2) years" did not guarantee any specific term of employment).

In this case, the language in the 1984 letter agreement is equally conditional in nature. The use of the word "should" clearly and unambiguously indicates that the terms and conditions of the 1984 letter agreement are contingent upon a mutually satisfactory employment relationship for at least five years.[2] Thus, like the language in the agreements in *Buian, Rubin,* and

*Payne,* the language here merely contemplates that the employment relationship *may* or *may not* last for a specific duration; it does not guarantee a specific term of employment. Under Illinois law, the absence of specific language in an employment agreement indicating the duration of the employment relationship renders the agreement terminable at will. *See Pudil v. Smart Buy, Inc.*, 607 F.Supp. 440, 442 (N.D.Ill.1985) (applying Illinois law); *Sargent–Welch Scientific Co. v. Mehrer*, 575 F.Supp. 121, 122–23 (N.D.Ill.1983) (applying Illinois law); *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987); *Vitkauskas v. State Farm Mut. Auto. Ins.*, 157 Ill.App.3d 317, 320, 109 Ill.Dec. 373, 375, 509 N.E.2d 1385, 1387 (3d Dist.1987); *Lukasik v. Riddell, Inc.*, 116 Ill.App.3d 339, 345, 72 Ill.Dec. 123, 127, 452 N.E.2d 55, 59 (1st Dist.1983).

Furthermore, Illinois courts have uniformly held that an employment contract which provides for termination upon notice creates a legal relationship of employment at will. *See Vitkauskas,* 157 Ill. App.3d at 320, 109 Ill.Dec. at 375, 509 N.E.2d at 1387; *DeFosse v. Cherry Elec. Products Corp.*, 156 Ill.App.3d 1030, 1034, 109 Ill.Dec. 520, 523, 510 N.E.2d 141, 144 (2d Dist.1987). Such a contract endures only as long as it is mutually satisfactory, and either party may terminate the employment at will without liability for breach of contract. *See Vandevier v. Mulay Plastics, Inc.*, 135 Ill.App.3d 787, 793, 90 Ill. Dec. 558, 562, 482 N.E.2d 377, 381 (1st Dist.1985).

In this case, the 1984 letter agreement contains a section conspicuously enti-

---

1. Because this is a diversity action, we must apply the law of Illinois. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. Plaintiff also urges this Court to find that the terms of the 1984 letter agreement are ambiguous. A contract, however, is not rendered ambiguous merely because the parties do not agree on the proper interpretation of its terms. *See Bank of Homewood v. Sjo,* 113 Ill.App.3d 179, 183, 68 Ill.Dec. 817, 820, 446 N.E.2d 1214, 1217 (1st Dist.1983). A contract term is ambiguous only if the language used is reasonably and

fairly susceptible to more than one meaning. *See Lenzi v. Morkin,* 116 Ill.App.3d 1014, 1016, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1st Dist.1983), *aff'd,* 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984). This is a question of law. *See Funstream Jet Express, Inc. v. International Air Service Co.,* 734 F.2d 1258, 1266 (7th Cir.1984); *Lenzi,* 116 Ill.App.3d at 1015, 72 Ill. Dec. at 416, 452 N.E.2d at 669. After reviewing the pertinent language of the 1984 letter agreement, we conclude, as a matter of law, that the language at issue is clear and unambiguous.

tled "Termination." This section addresses the issues of "voluntary resignation" and "company-initiated termination." The relevant language of this section provides that in the event of voluntary resignation, plaintiff "will be expected to give FMC at least 30 days notice." Although the agreement contains no reciprocal notice provision in the event of a company-initiated termination, it does provide that FMC will pay for the costs of returning plaintiff, his family, and his belongings to plaintiff's point of origin if FMC initiates the termination.

Attempting to circumvent the clear import of this language, plaintiff offers two equally meritless arguments. First, plaintiff argues that because he is "expected" to give thirty days notice in the event of voluntary resignation under the agreement, he could not ever truly terminate his employment "at will." This interpretation of the agreement, however, not only strains logic, but also is at odds with clearly established Illinois law. *See Vitkauskas,* 157 Ill.App.3d at 320, 109 Ill.Dec. at 375, 509 N.E.2d at 1387 (termination "upon notice" creates legal relationship of employment at will). Under the agreement, plaintiff is merely "expected" to give thirty days notice; he is not "required" to do so. The law recognizes a difference between expectations and obligations. *See, e.g., Lukasik,* 116 Ill.App.3d at 345, 72 Ill.Dec. at 127, 452 N.E.2d at 59 (noting that "may" does not mean "shall").

Following this same line of reasoning, plaintiff also contends that the absence of a reciprocal notice provision in the event of a company-initiated termination demonstrates that FMC's right to terminate him is "not unconditional." Apparently, plaintiff infers from the silence of the agreement on what, if any, notice FMC is "expected" to give in the event it chooses to terminate plaintiff that FMC cannot terminate plaintiff without notice. Plaintiff, however, fails to cite any authority which supports this quantum leap in logic. We remain unpersuaded that there is any such authority.

Accordingly, we conclude that the 1984 letter agreement did not guarantee plaintiff a term of employment for at least five years. Instead, it contemplated that *if* the employment relationship was mutually satisfactory for at least five years and plaintiff's assignment to Johannesburg lasted that long, the 1984 letter agreement would govern the terms and conditions of plaintiff's assignment. Based on that interpretation of the plain language of the 1984 letter agreement, we grant FMC's motion for judgment on that portion of Count I which seeks relief for FMC's alleged breach of a five-year employment agreement.

2. Breach Arising From Pre–Termination Reduction of Compensation

██ In Count I, plaintiff also complains of another act of breach by FMC. Specifically, plaintiff alleges that prior to his termination, FMC unilaterally altered his compensation in violation of the 1984 letter agreement. *See* Complaint at ¶ 18. Though plaintiff makes this allegation within the body of his complaint, he does not request damages as a result of this second act of breach in his prayer for relief.

In its motion for judgment on the pleadings and supporting memoranda, FMC contends that plaintiff has belatedly offered this theory because he senses the weakness of his theory based on a purported five-year employment contract. According to FMC, plaintiff's failure to request damages for this alleged second act of breach renders this portion of Count I, as it stands, legally deficient. As a result, FMC argues, this Court is not foreclosed from entering judgment on Count I in its entirety.

We disagree. As we noted at the outset, for purposes of this motion, plaintiff's allegation regarding FMC's pretermination reduction of his compensation, like all well-pleaded allegations of plaintiff's complaint, must be accepted as true. *See Susman,* 517 F.Supp. at 931. This Court cannot dismiss Count I in its entirety unless plaintiff can prove no set of facts which would support his allegation that FMC altered his compensation in violation of the 1984 letter agreement. *See Susman,* 517 F.Supp. at 934.

Plaintiff's mere failure to request damages for this second act of breach does not render this portion of his claim legally unactionable. On the contrary, existing authority suggests that if plaintiff can prove his allegations, FMC may be liable to him for unilaterally reducing his compensation. *See Bartinikas v. Clarklift of Chicago North,* 508 F.Supp. 959, 961 (N.D.Ill.1981) (although employer could have discharged employee for rejecting a proposed modification of an employment agreement, employer could not enforce terms of its modification *ex parte* ).[3] While plaintiff probably should have pleaded his two separate claims of breach in two separate counts, his failure to do so does not entitle FMC to judgment on the latter of the two claims alleged in Count I. Nevertheless, in the interests of keeping a clear record, we dismiss all of Count I, as it now stands, and we give plaintiff leave to amend his complaint for the limited purpose of pleading a claim for this second act of breach arising out of FMC's alleged reduction of plaintiff's compensation prior to his termination. We admonish plaintiff, however, that in the event he amends his complaint, he must explicitly certify that the amount in controversy exceeds the jurisdictional amount, exclusive of interest and costs. If plaintiff cannot so certify to this Court, then his action will be dismissed for lack of subject matter jurisdiction.

### B. Count II—Wrongful or Retaliatory Discharge

In Count II of his complaint, plaintiff purports to allege a cause of action for "retaliatory or wrongful discharge."[4] Plaintiff specifically claims that FMC terminated him in retaliation for refusing to agree to amend the terms and conditions of his employment. *See* Complaint at ¶ 70. In substance, this count essentially reincorporates the allegations which form the basis for the breach of contract claim in Count I.

In order to state a viable claim for retaliatory discharge under Illinois law, an employee must plead two essential elements: (1) that his employer discharged him in retaliation for his activities and (2) that the discharge was in contravention of a clearly mandated public policy. *See Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 134, 52 Ill.Dec. 13, 18, 421 N.E. 2d 876, 881 (1981); *Shores v. Senior Manor Nursing Home, Inc.,* 164 Ill.App.3d 503, 505, 115 Ill.Dec. 946, 948, 518 N.E.2d 471, 473 (5th Dist.1988); *Wheeler v. Caterpillar Tractor Co.,* 123 Ill.App.3d 539, 543, 78 Ill.Dec. 908, 911, 462 N.E.2d 1262, 1265, *rev'd on other grounds,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372, *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986). In its motion for judgment on Count II of plaintiff's complaint, FMC contends that plaintiff has not pleaded facts to establish the second element of a claim for retaliatory discharge. Without the benefit of authority or analysis, plaintiff summarily asserts that because he is not an "at will" employee, he is not required to plead that his discharge contravened a clearly mandated public policy.

---

**3.** Contrary to plaintiff's argument, *Bartinikas* does not stand for the proposition that an employer cannot discharge an employee if the employee rejects a modification of his employment contract. *See Bartinikas,* 508 F.Supp. at 961.

**4.** Although plaintiff uses the terms "wrongful discharge" and "retaliatory discharge" interchangeably in his complaint, others draw a distinction between the two. Technically, an action for "wrongful discharge" sounds in contract and is predicated upon the duty of good faith and fair dealing implied in all contracts. Illinois, however, does not recognize an independent cause of action arising from the implied duty of good faith and fair dealing. *See Medina v. Spotnail, Inc.,* 591 F.Supp. 190, 198 (N.D.Ill.

1984) (interpreting Illinois law); *Powers v. Delnor Hospital,* 135 Ill.App.3d 317, 321–22, 90 Ill. Dec. 168, 171–72, 481 N.E.2d 968, 971–72 (2d Dist.1985). An action for retaliatory discharge, on the other hand, sounds in tort and is predicated upon the duty embodied in the "clearly mandated public policy" of the state. Illinois does recognize a cause of action for "retaliatory discharge." *See Carrillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793, 799 (N.D.Ill.1982) (interpreting Illinois law); *Powers,* 135 Ill.App. 3d at 322, 90 Ill.Dec. at 172, 481 N.E.2d at 972. Because Illinois substantively recognizes a cause of action only for "retaliatory discharge," we treat Count II of plaintiff's complaint accordingly.

Plaintiff's analysis, however, is fatally flawed for two reasons. First, we have already concluded that plaintiff was an employee at will. Second, violation of a clearly mandated public policy is the very heart of a cause of action for retaliatory discharge under Illinois law. That such an allegation is a prerequisite to stating a claim for retaliatory discharge in Illinois is clearly established. *See Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 67, 92 Ill.Dec. 548, 549, 485 N.E.2d 359, 360 (1985) (a cause of action for retaliatory discharge is recognized only when the employee's discharge violates a clearly mandated public policy); *Barr v. Kelso Burnett Co.,* 106 Ill.2d 520, 527, 88 Ill.Dec. 628, 631, 478 N.E.2d 1354, 1357 (1985) (validity of complaint alleging claim for retaliatory discharge is tested by determining whether discharge violated a clearly mandated public policy); *Palmateer,* 85 Ill.2d at 133, 52 Ill.Dec. at 17, 421 N.E.2d at 880 (foundation of the tort of retaliatory discharge lies in the protection of public policy). Thus, plaintiff's failure to allege facts which establish that his discharge violated a clearly mandated public policy warrants dismissal of Count II of his complaint.

## CONCLUSION

For the reasons outlined in this opinion, FMC's motion for judgment on Count I of plaintiff's complaint is granted in part and denied in part. The Court grants FMC's motion for judgment on that portion of Count I which seeks relief for FMC's alleged breach of a five-year employment agreement and dismisses that portion of the claim with prejudice. The Court denies FMC's motion for judgment on that portion of Count I which seeks relief for FMC's alleged breach of the 1984 letter agreement prior to plaintiff's termination; however, because plaintiff has neglected to request damages for this latter act of alleged breach and has combined two claims in Count I, we dismiss the remaining portion of Count I without prejudice. Plaintiff is granted leave to file an amended complaint for the limited purpose of repleading this claim for FMC's alleged pre-termination breach of the 1984 letter agreement, pro-

vided that the amended complaint contains the requisite jurisdictional certification as to the amount in controversy, exclusive of interest and costs; otherwise, plaintiff faces dismissal of his claim for lack of subject matter jurisdiction. Finally, the Court grants FMC's motion for judgment on Count II of plaintiff's complaint and dismisses that claim with prejudice.

IT IS SO ORDERED.